## No. 8489.

JOHN T. MOORE & CO. vs. EMORY CLAPP AND JOHN J. GIDIÈRE.

Where factors agree with a planter that they will pay to a third person a stated amount upon receipt from him of a designated number of hogsheads of sugar, and the planter ships a portion of the sugar, the factors are liable to such third person on the stipulation in his favor, to the extent of the proceeds of the shipment. But where a portion of the crop is held by the manufacturers of the sugar under a pledge, which the factors are compelled to pay to get the sugar, and it is also subject to the privilege of the laborers, which they had to assume, and the sugar is shipped to the factors by the manufacturers and in their name, and its entire proceeds is absorbed by these preferred claims, the factors getting only their commissions on it, they are *not bound to pay the amount of said proceeds to the said third person* under the aforesaid stipulation.

APPEAL from the Civil District Court for the Parish of Orleans. *Houston,* J.

*Singleton, Browne & Choate* for Plaintiffs and Appellees.
*Percy Roberts* for Defendants and Appellants.

The opinion of the Court was delivered by

BERMUDEZ, C. J.    The plaintiffs claim to be creditors of the defendants for the sum of $3000, in consequence of their acceptance of a certain stipulation in writing made in their favor by the latter.

The defense admits the writing, but is practically a general denial.

There was judgment for $1860, with interest in favor of plaintiffs and the defendants appealed. In their answer to the appeal, the plaintiffs join therein and pray that the judgment be increased to $2900, with interest.

The material facts disclosed by the record are simply the following:

On October 3, 1877, the plaintiffs were creditors of J. H. Acklen, a planter, for some five thousand dollars.

On that day, Clapp Bros. & Co., Acklen's merchants, wrote to him in these terms:

"We beg to say to you that, on receipt of the first 100 hogsheads of sugar of your growing crop, we will pay your draft to John T. Moore & Co. for two thousand dollars, and will pay your draft for $1000 in favor of said parties on receipt of each additional lot of 50 hogsheads sugar."

This writing was immediately transmitted to John T. Moore & Co. by Acklen, who thus wrote to them:

"The enclosed letter from Messrs. Clapp & Co. explains itself. Mr. Emory Clapp agreed with me in reference to my drawing on my first shipments, but said that part had been covered by my draft to you of $3000, already paid. I enclose you (2) two drafts of respectively $2000 and $2500, though this is hardly the shape I would have put it in, nor exactly what we spoke of. Should you feel any uneasiness in this matter, let me know at once, for your courtesy in this transaction has been such that I am highly appreciative of it, I assure you," etc.

On March 4th following (1878), Acklen notified his merchants not to pay those drafts.

This injunction was notified by the defendants to the plaintiffs, who answered, protesting against any deprivation of their vested rights and notifying defendants to hold themselves in readiness to pay, without regard to Acklen's letter.

On November 20, 1877, plaintiffs presented to defendants the $2000 draft, which the latter refused to pay, because they had not received 100 hogsheads of sugar, and could not pay until then.

Plaintiffs then instituted inquiry and subsequently ascertained from Foos & Barnett, the sugar planters who had a contract with Acklen to clarify his syrup and produce therefrom granulated sugar, that they had shipped to defendants 145 hogsheads of sugar, 93 in the name of Acklen and 52 in their own name; the last shipment being thus made under an *understanding* with Acklen and Clapp Bros.

The instruction from Acklen to Barnett, one of the firm, is dated New Orleans, January 10, 1878, and in these terms:

"Mark entire balance of sugar: *Foos & Barnett.* Telegraph Clapp Bros. & Co. at once from Morgan City that you will ship over thirty hogsheads so marked. Show Nealy this; letter by mail."

A letter to Foos & Barnett from Clapp Bros., dated New Orleans, January 18th following, contains the following:

"We have no interest in this sugar, as the proceeds will be divided among yourselves and the laborers, and you will therefore ship the sugar in your name and for your account, and when we will sell it the proceeds are to be returned to you and after you have paid your account

the balance is to be paid Mr. Acklen's manager of the store for division among the hands. This is Mr. Acklen's instructions. It is immaterial how the sugar is marked, let it be shipped in *your name* and for *your own account*, and we will send you back the proceeds."

Barnett testifies that under their contract with Acklen for clarification and granulation, there was due Foos & Barnett some $3000 which were paid them by Clapp Bros. three or four days *before* they shipped the sugar. He further says that they afterwards had no interest in the sugar, and that it was only because of the instructions from Acklen and Clapp Bros. & Co. that it was shipped in their name. "They instructed us," says he, "to ship it that way and we did so. *We had no interest in the matter whatever. It was Mr. Acklen's sugar and he could have it sent whenever he pleased. It was none of our business.*"

From this statement of the facts, as we find them, it would appear at first blush that the defendants had no valid reason to object to the payment which they were called upon to make; but they earnestly contend that they are not liable at all to the plaintiffs; that subsequently to their engagement of October 3, 1877, they never received a shipment of 100 hogsheads, but one of 93 hogsheads only, and that such shipment not being that stipulated in their engagement, they are not bound for the payment of the draft for $2000 already mentioned. They further contend that the 52 hogsheads which constituted the second shipment did *not belong to Acklen*, as it was made by Foos & Barnett, in their own name and for their account, and were sold and the proceeds applied accordingly. They moreover urge that, if Acklen was the owner of the sugar, Foos & Barnett had a lien on it for the amount due them; that they also, Clapp Bros. & Co., had a privilege on it for advances under two contracts with Acklen—one under private signature and another in the authentic form; the latter being an act of mortgage to secure $14,-000, both acts dated March 1, 1877; the last mentioned only was recorded on the 3d following; that they had an interest in discharging the amount due Foos & Barnett; and that on doing so they were legally subrogated to all their rights against the sugar.

They finally insist that, under the terms of their letter of October 3, 1877, they are not bound to pay the drafts therein mentioned in favor of plaintiffs, unless the sugar shipped was delivered *free* from all liens and privileges, and that the 52 hogsheads in question arrived burdened with a claim upon it.

We consider the first objection as abandoned, as we find in defendants' brief the following language:

" There is no issue between the plaintiff and ourselves as to the debit of the 93 hogsheads. It is agreed that under our letter of October 3, 1877, we are justly chargeable with them. But as to the 52 hogsheads, there is an irreconcilable difference of opinion. The question about which that difference obtains is this:

" Is the receipt of the 52 hogsheads by the defendants to be held as a partial fulfillment by Acklen of the condition on which defendants undertook the obligation in favor of the plaintiffs?"

Should it be claimed that we misunderstand this statement, and that the defendants nevertheless resist because they did not receive the *one hundred* hogsheads stipulated, then we simply remark that, although it would have been legitimate for the defendants to have declined receiving a number of hogsheads less than that mentioned, they cannot set up that objection after receiving a lesser quantity of hogsheads. They thereby relinquished their right to reject, and by accepting the shipment they made themselves liable *pro tanto*. Chitty on Contracts, 1083-4; 22 A. 150; Benjamin on Sales, 18 Pick. 178, 553.

This expression of our views applies not only to the first, but to the second; therefore, to both shipments.

It dispenses us from examining and passing upon the abstract and interesting question which defendants' learned counsel has discussed with his usual sagacity and ability and submitted to our consideration, namely: " Is the accomplishment of a suspensive condition of a contract divisible or indivisible?"

From that statement and admission, and from our views in addition, it clearly follows that as the judgment appealed from subjected the defendants to liability only for the amount thus confessed to be chargeable, the finding of the district judge must be affirmed in that respect.

The remaining question consists in determining: whether, under the answer of the appellees, the amount allowed by the lower court should be increased so as to hold the defendants responsible besides, in consequence of the shipment of the fifty-two hogsheads by Foos & Barnett.

We deem it proper to premise that the obligation assumed by the defendants in their letter of October 3, 1877, in favor of plaintiffs, was not a *nudum pactum*, one for which no consideration passed.

Moore & Co. had a heavy claim for supplies furnished the plantation and considered that they had a right to a privilege which they could enforce, with a preference on the crop.

The testimony of one of the defendants indicates pretty clearly that the arrangement culminating in the letter, was the result of a sort of compromise devised to avert litigation. The object was then to

silence plaintiffs. This was done by securing only part of their claim. Had not this been accomplished the defendants might have been losers.

The resistance now offered by them to the plaintiffs cannot be sustained, unless justified by law or equity.

There can be no doubt that these hogsheads never ceased to belong to Acklen, to the knowledge of the defendants and of Foos & Barnett. The transactions relative to them clearly establish that fact. While it is true that Foos & Barnett had for the clarification and granulation of the syrup converted into the sugar, a lien and privilege upon the sugar, the result of their work, it is no less so, that, on payment to them of the amount due them, *before* the shipment, their claim and their lien and privilege, at least as far as they are concerned, vanished completely. *They, themselves, acknowledge that they then had no interest in the sugar, which was Acklen's exclusive property.* The sugar was never theirs. They never claimed it as belonging to them. They merely asserted a claim upon it. The moment that claim was satisfied, the sugar was disencumbered and was Acklen's *absolutely.*

Had Foos & Barnett *not been previously paid* and had they consigned the sugar to Clapp Bros. & Co., in their name, to be sold for their account, a different case might have been presented. Whatever, even then, the responsibilities of Clapp Bros. & Co. might or not have been to the plaintiffs, they merely would have been accountable to Foss & Barnett, their assignors, for the proceeds. But as Foss & Barnett had been satisfied before the sugar was shipped, Clapp Bros. & Co. had no further responsibility towards them.

An examination of the text of the two contracts, under private signature and authentic, invoked by the defendants, leads us to the inference that it was not thereby understood that, as a security for the reimbursement of advances made by them, they would have a lien on the crop. No doubt, privileges are the creature of the law, but they are *stricti juris* and arise only in the cases and in the circumstances specified by law.

Whatever the terms and stipulations in those acts be, it is clear that a privilege does not exist in favor of one not shown to be a creditor, for it is an accessory. There can exist no accessory in the absence of a principal. At the time the contracts were entered into, 1877, such privilege was regarded by the jurisprudence as one which should have been recorded.

It is not shown, however, that the defendants were creditors for advances made anterior to the date of their payment to Foos & Barnett

of the $3000 already mentioned, and that there was a registry from which such privilege, in favor of Foos & Barnett, could be deduced.

But, even conceding that the defendants were privileged creditors and were legally subrogated by the payment of a claim which was secured by a lien and was preferable to theirs, the question still remains: whether, under the terms of the letter of October 3, 1877, containing formal stipulations in favor of John T. Moore & Co., which became irrevocable by their acceptance, they, the defendants, can be heard to set up, successfully, their own claim thus acquired as against their obligees.

Clapp Bros. & Co. aver and insist that, under the letter and spirit of that contract, they bound themselves to pay, only on condition that the sugar would come to them free *from all liens and privileges*, and that the fifty-two hogsheads in question were burdened when they were shipped by Foos & Barnett.

The letter is couched in clear and unambiguous language. By it, Clapp Bros. & Co. bound themselves to pay Acklen's drafts in favor of Moore & Co. on *one condition only*, which was the shipment of the sugar, the payment to be made on receipt of the sugar and to be graduated by the quantity received.

The condition that the sugar, consigned and received, was to be *free* from all encumbrance, was not inserted by Clapp Bros. & Co., and cannot be interpolated by this Court to the damage and injury of the third parties to whose benefit the stipulations were *otherwise* unqualifiedly made and who acquired vested and irrevocable rights to the same by their acceptance of them. R. C. C. 1890, 1902.

If the case was doubtful, the agreement would have to be interpreted against them, for they contracted the obligation. Where doubt or obscurity arises for the want of necessary explanation which one of the parties ought to have given, the law provides: that the construction most favorable to the other party should be adopted, be that party *obligor* or *obligee*. R. C. C. 1957, 1958.

It is good evidence of the existence of doubt or obscurity, that the members of this Court are divided in opinion on the subject.

Even if the contract contained the condition that the sugar should come *free from all liens*, it could not be plausibly argued that such a clause would cover liens in favor of the obligors, for such could not be within the interest of the parties.

The law applicable to this case is too plain to be misunderstood and misapplied.

A stipulation *pour autrui* may be revoked at any time *before* accep-- tance, but not *afterwards*. 3 N. S. 207; 11 L. 44; 6 A. 26; 6 R. 410; 12 R. 152; 2 R. 304.

Creditors may avail themselves of a third person's obligation, *ex æquo et bono*, to their debtor. 3 A 294.

A creditor suing a third person who has assumed the debt on a con- tingency which has happened, cannot be defeated by equities which the latter may have against the original debtor. 8 M.60; 4 L.238; 18 L.42.

Where a letter authorizes the party to whom it is addressed to draw, up to a certain amount, on the writer and is evidently to be exhibited to third persons to induce them to take the bills so drawn, the promise which the letter contains is a promise to any one taking a bill on its faith. 3 A. 690; also 10 A. 340; 12 R. 52; 18 A. 678; 27 A. 653; 28 A. 140; 18 Wall; E. Converse, 30 A. 199; 28 A. 88.

Factors who promise to accept the draft of a shipper as soon as they receive a bill of lading of the consignment are bound on receipt of the bill and can only apply to a debt due them by the owner, the surplus of the proceeds of the consignment. 19 L. 218.

From whatever standpoint the matter can be viewed, it is undeniable that the crop consigned: the sugar and molasses (including the fifty- two hogsheads shipped by Foos & Barnett), have realized more than was necessary to pay the shippers, the hands and the plaintiffs' present claim $2900.

After a full review of the facts as shown by the record and an atten- tive consideration of the law applicable to the case as stated by counsel and as found by us, we are unable to come to the conclusion that the obligation sued on is to be construed as incorporating the condition that plaintiffs' drafts would only be honored, if the sugar mentioned in the instrument should be received free from all liens. We cannot even then admit that when it was received, it was in any way *burdened*.

It is, therefore, ordered and decreed that the judgment appealed from be amended by striking therefrom the words "eighteen hundred and sixty dollars" ($1860), and substituting thereto the words "twenty- nine hundred dollars" ($2900), and that thus amended, said judgment be affirmed, with costs in both courts.

Justices Fenner and Manning dissent.

FENNER, J. I concur in the decree except as to the fifty-two hogs- heads received from Foos & Barnett. Those hogsheads were not in Acklen's possession and control, and could not have been shipped by

him without first paying the $3000 due thereon to the manufacturers. Had the latter shipped the sugar with instructions to pass to Acklen's account the surplus over the sum due themselves, clearly this surplus would have represented the value of all of that sugar, which could, under any circumstances, be said to have been received from, or for Acklen. The case is not, in my judgment, altered by the fact that defendants paid the sum due the manufacturers before the latter shipped the sugar, instead of afterwards. I think, therefore, that of the second draft only such proportion is due to plaintiffs as the surplus going to Acklen's account bore to the value of one hundred hogsheads. To this extent I dissent from the opinion and decree.

Manning, J., concurs in this opinion.

---

## On Rehearing.

Todd, J. Since the rehearing was granted in this case we have reexamined with the greatest care and patience all the questions of law and fact presented by the record, which have been so ably and elaborately discussed by the learned counsel for the respective parties.

The result of this revision, even conceding that the errors of fact suggested by defendant's counsel in our previous opinion are correctly charged, has been to confirm us in the conclusions announced in that opinion as to the liability of the defendants to plaintiffs, to the extent at least of the ninety-three hogsheads of sugar received by them from Acklen.

There is no doubt in our minds from the plain text of the letter of the 3d of October, 1877, so often referred to, and the basis of the defendants' obligation, and from the circumstances under which it was written, that it was the true intent and understanding of the parties that defendants were to pay the amounts stipulated therein to the plaintiffs upon being placed in funds by means of the contemplated shipments, to the extent specified; and that the sugar so consigned, whether one hogshead or one hundred, was to enure to the benefit of the plaintiffs, and to furnish funds to pay them in the relative proportion of the entire amount promised to each consignment, or its proceeds. The stipulation of defendants in plaintiffs' favor in this letter should be viewed without reference to the condition of accounts between defendants and Acklen at the date of the letter, and, in fact, without taking into consideration the indebtedness of Acklen to the defendants; and the matter should be treated, so far as plaintiffs were concerned, as if Acklen did not owe the defendants at the time any

amount whatever—for in our view the indebtedness of Acklen to the defendants at the time constitutes no factor for determining the question of their liability under their engagement. The plaintiffs were strangers to the condition of affairs between them, or to be so presumed; and the only thing we have to deal with in determining their rights is the written promise in their favor, and whether or not the condition or the *consideration* of that promise was fulfilled. The condition expressed in the writing formed, in our opinion, the sole consideration for the payments promised, or the only one entitled to be considered; and the pertinent inquiry is, was that condition complied with, and if so, to what extent.

Were it necessary to look further for a consideration, it could be found in the fact that plaintiffs were the creditors at the time of Acklen, and so acknowledged by the defendants, and whether privileged creditors or not is immaterial. That upon receiving this promise, looking to the payment of their debt, they *rested content*, and took no step to collect or otherwise secure it, although at that time, so far as the evidence shows, there were no *recorded* privileges or pledges on or against his crop in favor of defendants or any one else.

We are thoroughly satisfied that from no standpoint from which it can be viewed could the contract or engagement be considered as a *nudum pactum;* and at the same time convinced that it was not of that class of contracts cited by defendants' counsel, containing an *indivisible* condition and dependent upon the happenings or fulfillment of that condition *in its entirety* for its *obligating* force. We have studied closely the authorities cited to sustain the counsel's propositions on both points mentioned, and find them *inapplicable*.

Returning to the inquiry as to whether the conditions of the contract were fulfilled in whole or in part by shipments of sugar by Acklen, it is undisputed that he shipped to the defendants ninety-three hogsheads; and under the views announced, plaintiffs were clearly entitled to the net proceeds of the same.

## II.

As to the fifty-two hogsheads subsequently shipped, we are equally as well satisfied that our conclusion, as announced in our former opinion, was erroneous, and defendants should not be charged with their proceeds.

In the first place, these fifty-two hogsheads were not shipped by Acklen nor received from him. The evidence, moreover, fully establishes that it was not in the power or within the resources of Acklen

to ship them. Before their shipment and receipt by the defendants they were beyond his control.

In point of fact, Acklen had abandoned all claim and interest in this lot of sugar, and had so announced to the defendants, owing to its being in possession of Foos & Barnett, the manufacturers of it, under pledge for three thousand dollars; and besides, as we are fully satisfied, subject to the privilege of the laborers for all that it was worth over that sum. It is true that the sugar had not been seized by the laborers, but a number of barrels of molasses had been seized by some employees on the plantation; but whether all of the laborers, or any of them, made or joined in the seizure, the evidence does not inform us. That the wages of the laborers had not been paid and is still owing is proved, and such debts to the laborers necessarily carried with it a privilege on all the products of the plantation.

Consequently, Acklen did not and could not comply with the condition on which plaintiffs were entitled to be paid anything out of its proceeds, and on which their right to look to defendants for payment solely depended. That such was the case was owing to no fault or connivance of the defendants.

In this condition of affairs the defendants went forward, paid the amount of the pledge, and assumed to pay the laborers ; and when the sugar was received and sold, remitted the balance of the proceeds, which was paid over to the laborers, as shown by the evidence in the record ; and thus defendants realized or received nothing for this sugar except their commissions on its sales. Under these circumstances, how can it be said that the condition, and the sole condition on which payment was to be made as relates to this lot of sugar, was ever fulfilled ? The contract evidently contemplated—and neither party could have misunderstood it in this respect—that it was out of the proceeds of the sugar, as realized by the defendants, that plaintiffs were to be paid: in other words—in accordance with the testimony of one of the defendants—that the sugar was to furnish the means to pay the plaintiffs.

Suppose, for instance, that the defendants had not interposed to rescue this sugar from the claims upon it, and that it had been seized—as probably it would have been—to pay these debts, and whilst under seizure it had been shipped to the defendants and they had sold it and remitted the proceeds to the sheriff to pay off these claims, could it be held that, in such case, the defendants would still be bound to again pay the amount of these proceeds to the plaintiffs?

Defendants were not bound to wait till this impending event happened before acting; and in taking measures and spending their money to avert it they should not be placed *duriori casu* than if they had delayed till the threatened complication had become an accomplished fact. In either event, they would have been stripped of the entire proceeds of the sugar.

Much has been said in argument as to the effect of the payment made by defendants to Foos & Barnett and to the laborers, and whether such payment subrogated them to the rights of the creditors, and whether the sugar was not still the property of Acklen when received by defendants. The determination of these and other questions suggested are not necessary, in our opinion, to the decision of the case and have no important bearing on it.

The substantial facts to be considered, and they are all-sufficient for our conclusion, are, that under the contract Acklen was to ship so many hogsheads of sugar as a condition precedent for the payment stipulated to be made the plaintiffs by defendants, and thus furnish the means out of which those payments were to be made. To the extent that Acklen complied with the condition and furnished the contemplated means the defendants were bound; but when he failed to provide the means by the expected shipments, whether the failure was from one cause or another, so it was not by the fault of the defendants, they were not bound. The fact that in order to get the sugar defendants had to pay out the entire value of it, amounted to the same thing as if they had never received it and it had never been shipped to them at all.

For these reasons the decree heretofore rendered is now set aside; and it is ordered, adjudged and decreed that the judgment of the lower court be affirmed, defendants to pay the costs in both courts.

---

### DISSENTING OPINION.

BERMUDEZ, C. J. To decline to recognize that the plaintiffs are entitled also to the proceeds of the 52 hogsheads of sugar, is simply to refuse to admit the existence of facts and to embarrass the application of the law.

The theory upon which defendants rest such resistance is, that this sugar, which was in the possession of Foos & Barnett, had ceased to be in Acklen's control and was affected at the time of shipment with a lien and privilege in favor of the granulators and others; that it was received by defendants thus *encumbered* and that the proceeds of sale were applied to the extinction of the claims upon it.

The sugar never ceased to belong to Acklen, even after it had been granulated. It continued to be his until it was sold by defendants. When thus sold the proceeds representing it belonged to Acklen.

It may be that Foos & Barnett could have exercised the right to detention for the payment of their claim for granulation, but whatever their rights were, they never were the *owners* of the sugar.

They might have parted with it and transferred their rights over it in favor of any one they pleased, but this could have taken place only by means of a contract, which never was entered into. Some party having an interest might have paid them and thus become legally subrogated to their rights; but the defendants have no interest which could, on payment, have entitled them to a subrogation. They were utter strangers in that respect and can no more claim to be in the shoes of Foos & Barnett, and others pretending to have claims over the sugar, than if they never existed.

It was by the joint action of Acklen and of defendants that the sugar passed from Foos & Barnett's possession, and this too without any notice whatever to the plaintiffs, in whose favor stipulations had been made by those parties, which they had duly accepted.

Foos & Barnett expressly say that they had no interest in the sugar at the time of shipment; that they shipped it as it was, by the orders of both Acklen and of defendants; that it was none of their business how it was done.

The supposed instances of a seizure by Foos & Barnett of the sale of the sugar by defendants, far from justifying the conclusions reached, are antagonistical to and completely demolish them.

No doubt the proceeds in such case would be subject to the claim, if recognized, of the seizing creditors; but who can dispute that, if the latter had no privilege, or if a third party without interest had paid them without obtaining a transfer and subrogation, that those proceeds would have remained subject to the claim of the plaintiffs under the *tri partite* contract?

Take the familiar instance of a seizure of real estate to satify a claim secured by vendor's privilege and mortgage, or still the more common and analogous case of a landlord who has a right of retention, seeking under a writ payment of his rent or possession of the property *securing* it.

Suppose that one not a mortgage creditor, or one having no interest to pay the claim, should come forward and *discharge* the same without any transfer or subrogation from the suing creditor, could such party, even as regards the defendants, claim a right to enforce the writ or

claim with privilege or in any manner? How, then, could he do so as against parties who have by contract adverse rights, or who at least are third parties. Such person would become and remain simply an ordinary creditor.

The supposed cases cannot be dissimilated from that at bar.

One who has no privilege or right of detention cannot transfer any. If he have and be paid by one having no interest, the right to the security is not transferred but is extinguished for ever.

This is precisely what has occurred here. Foos & Barnett had no privilege. If they had, they were not paid by anyone having an interest and did not, by contract, transfer their claim with its security, as understood by the defendants and Acklen, himself. How then can they claim any preference over plaintiffs?

The only question decisive of this branch of the case, is that of transfer and subrogation *vel non*. Tested by it, plaintiffs position is impregnable and the validity of their claim is undisputable. It is to regretted that it was not considered and determined.

I think that the previous decree is correct, that it has done justice between the parties, and that it should be maintained, not only in part as it is, as concerns the ninety-three hogsheads, but also as to the fifty-two remaining ones.

Poché, J. concurs in this opinion.