No. 13,346.

SUCCESSION OF AMELIA CORMIER.

SYLLABUS.

1. Where property, which must be held to have been the separate property of the husband, was carried by him into the community formed by the marriage, became merged into it, and enured to its benefit, its value becomes an indebtedness due the husband by the community.

2. No fixed rule or standard as to the extent or sufficiency of evidence necessary to establish a claim of that character can be formulated. Each case must rest on its own peculiar state of facts.

3. The prescriptions which would otherwise bar such a claim are suspended as against the husband during the time he fills the positions of tutor to the children of the marriage and administrator of the deceased wife's succession.

4. There is no reason why the father, who is both tutor of the children and administrator of their mother's succession, should not account in his settlement of the mother's succession to her heirs of age for moneys received by him from their grand-father as their inheritance by right of representation of their mother.

APPEAL from the Twelfth Judicial District, Parish of Calcasieu—
Read, J.

---

Pujo & Moss for J. V. Moss, Sr., as Administrator and Personally, Appellant.

*George H. Wells* for Oliver H. Moss et als., Opponents, Appellants.

*Winston Overton* and *E. L. Wells* for Mrs. D. H. Lyons, Opponent, Appellant.

The opinion of the court was delivered by

BLANCHARD, J. Jane Coward, the first wife of J. V. Moss, Sr., died on September 6, 1854, leaving four children of the marriage, one of. whom, however, died early. Those who survived as her heirs are: E. Lavinia Moss (now the wife of D. H. Lyons), Amelia Moss and J. V. Moss, Jr.

Amelia Cormier, the second wife of J. V. Moss, Sr., whom he had married in April, 1856, died in April, 1874, leaving nine children of the marriage and heirs of her estate. They are as follows: Clara O. Moss (who married Solomon West, and who is now deceased, leaving two children and heirs), Erastus C. Moss, Cornelius Johnson Moss, Oliver H. Moss, Emma Josephine Moss (now wife of Bujard), Annie Rosa Moss, Richmond L. Moss, Arthur H. Moss and Susan Augusta Moss.

The community of acquets and gains existed in both these marriages, and in this litigation are involved the always difficult and intricate questions of the settlement of conflicting community claims, and of succession rights, and those asserted by the surviving spouse, and by heirs forming two sets of children, of common origin on the father's side, and of diverse origin on the mother's.

When Moss married Miss Coward his means were exceedingly limited, and beyond a few hundred dollars in money and property, later realized from her mother's succession, she brought him nothing.

After some years he settled upon a piece of vacant public land (about eighty acres) in proximity to the then village of Lake Charles, erected a small house upon it and lived there with his family. Here were passed the last years of Jane Coward and here she died. The husband and children continued to reside there, and when in 1856 he married Amelia Cormier she was brought to this house, which continued to be the home of the family thus reorganized.

The evident intention of Moss, when he settled upon this land near Lake Charles, was to enter or purchase it from the U. S. Government as soon as he could, and, accordingly, in 1860, about four years after his marriage to Miss Cormier, he did so purchase it.

This property thus fell into the community of the second marriage, though the actual settlement upon it was during the lifetime of the first wife.

When Moss acquired title to this small tract of land it had no value beyond a few hundred dollars. But time passed and with it the old order of things gave place to the new; a great development of that section of the State began; Lake Charles, the county seat of Calcasieu Parish, from a hamlet assumed the proportions of a city, absorbing within its municipal limits the land upon which Moss lived; and, finally, when in 1893 its sale at public auction, provoked to pay debts and for purposes of partition, took place, the tract, laid off into squares, blocks, lots and streets, realized the large sum of $33,236.

The one-half of this fortune pertained to the husband; the other half to the heirs of the second wife. It seems the irony of fate that the heirs of the first wife have, as such, no share therein.

Between the date of the marriage of Moss with his first wife and her death, the community between them acquired but little property. After her death, but not until some months *after* his second marriage, he caused an inventory to be taken and applied to be recognized as natural tutor of his children, the issue of the marriage. This inventory showed property, all community, of an aggregate value of $1361.27. It included one slave—a negro woman—appraised at $400. It also included the improvements erected upon the tract of public land near Lake Charles, where the family lived, and the value of the same was put down at $400. No action seems to have been taken on the application for appointment as natural tutor.

In 1877, three years after the death of his second wife, Moss applied for confirmation as natural tutor of the children of the second marriage, and was confirmed and qualified as such.

In 1888 he applied to be appointed administrator of the succession of the second wife, Amelia Cormier, and caused an inventory of the effects thereof to be taken. The appraisement showed property to the value of $3671.25. He seems to have proceeded no further in the matter at that time, and nothing was done until January, 1893, when he applied again for the administration, and another inventory was taken, showing property valued at $8225. He was, under this second application, appointed administrator and qualified as such.

Succession of Cormier.

He at once applied for authority to sell the property in order to pay debts of the succession, effect a partition and settle the estate and the community.

Two of the children of the second marriage were still minors.  A family meeeting in their interest was convoked, and a sale of all the property was recommended.  This sale took place, and then it was that there was realized the aforementioned large price of $33,236.  This was in March, 1893.

In 1898 three of the sons of the second marriage obtained an order against the administrator to file an account.

No account and no tableau of debts had hitherto been presented by him.

The order directed an account and a tableau of debts and charges and a provisional tableau of distribution to be filed.

He straightway complied with this order, and a little later presented a second supplemental account and tableau.

From the oppositions filed to these accounts and tableaux, this litigation arose.

On the account thus presented, appears the following, under the head of "Ordinary Debts:"  "Amount due the community existing between Jane Coward, deceased, and J. V. Moss, Sr., one-half of which belonged to her heirs (naming them) and the other half to J. V. Moss, Sr., as shown by inventory on file in the Succession of Jane Coward, less a slave mentioned, the value of which has been deducted $961.63."

"Interest thereon since date of dissolution of second community, April 1, 1874, at 5 per cent.—24 years, 5 months and 20 days..............................................1175.86."

These two amounts aggregate ........................$2137.49

The administrator contends that the property of the first community, for the value of which this charge is made, was on hand at the beginning of the second community, went into the second community and was used for and enured to its benefit.

This claim on behalf of the first community is resisted by six of the nine children of the second marriage, who oppose its allowance.

It is resisted both on the facts and the law, and as against it the prescriptions of four, five, ten, fifteen, twenty and thirty years are pleaded.

The pleas of prescription were overruled, but the opposition to the allowance of the claim was maintained, and the items thereof, aggregating the aforesaid $2137.49, were ordered stricken from the account.

The account and tableau of the administrator were opposed in other particulars, which will be adverted to later on.

The judgment below amended the account and tableau, and as thus amended homologated the same.

Orders of appeal were taken by all the opponents as well as by J. V. Moss, Sr., both as administrator and individually.

Of the property inventoried in the Succession of Jane Coward, all of it was *movable* in character, except the slave valued at $400, and an interest in land valued at $15. We have already seen it was all community property. It, therefore, belonged—one-half to J. V. Moss, Sr., the other half to his children of the first marriage, as heirs of their mother.

It does not appear that the community owed any debts which were paid out of the property.

The inventory shows the property to have been of the character to be imediately available for the use of the second community, which began with the marriage of Moss to Amelia Cormier.

As surviving parent, Moss was entitled, under the law, to the usufruct of his children's share in the community property of the first marriage. But this right of usufruct ceased when he entered into the second marriage.

Act 152 of 1844.

The situation, then, of Moss at this time was this:—Without having caused himself to be appointed and qualified as tutor of his children of the first marriage, and having lost the usufruct of their interest in the community by reason of his second marriage, he, nevertheless, remained in possession of the same and converted it to his own use. From that moment he became indebted to his children of the first marriage for the value of their share of the community property and owes the same to them now, with legal interest from the time when his usufruct ceased, which was the date of his second marriage, less whatever amounts, if any, he may have paid them, respectively, on account of their inheritance.

We do not understand that he disputes his indebtedness to them, or claims that the same is barred by prescription. On the contrary, his pleadings in the instant case, both in the court below and in this court,

are such as to virtually admit liability and to take the case out of prescription even if prescription were applicable.

But the Succession of Amelia Cormier, the second wife, is not the place where inquiry as to the husband's indebtedness to the children of the first marriage may be properly gone into, or settlement reached. Their rights in this particular are reserved to them, to be enforced, if need be, in proper proceedings taken against him.

Having thus possessed himself of the share of the community property of the first marriage belonging to his children of that marriage, what did Moss do with the same and with the share of the property belonging to him of right as surviving husband in community? If he carried it into the second community, if it was appropriated by the second community, if it became merged into it, then its value became an indebtedness due him by the second community.

A review of the evidence found in the record and of all the circumstances connected with the case, and a consideration of the situation and environment of the parties at the beginning of the second community, produce the conviction that all this property went to enrich the second community; was appropriated by the second community and enured to its benefit.

This being so, the *community* which existed between J. V. Moss, Sr., and Amelia Cormier—not the succession of the latter—owes its value to the husband.

Succession of Foreman, 36 La. Ann. 700; Succession of Breaux, 38th Ann. 728; Succession of Kidd, 51st La. Ann. 1157; Denegre vs. Denegre, 30 La. Ann. 275.

In dealing with questions relating to the liability of a conjugal community to the separate estate of the husband or wife for separate funds of his or of hers, as the case may be, alleged to have enured to the benefit of such comumnity, this court has found it necessary to say that no fixed rule or standard as to the extent or sufficiency of evidence necessary to establish such claims can be formulated, and that each case must rest on its own peculiar state of facts; that there must be taken into consideration all the surroundings and circumstances applicable to a given case to ascertain whether it can be reasonably said that the situation of the community, proposed to be held liable, could or would, at the time of the husband's or wife's death, have been found as it was, in the absence of having been assisted by

the property or funds for the value or return of which the claim is made.

Succession of Kidd, 51 La. Ann. 1169.

This rule we apply to the case in hand, with the result that the conclusion is reached the claim of the husband against the second community for $961.63 of the property shown in the inventory taken in the Succession of Jane Coward, the first wife, is made out with reasonable and legal sufficiency.

The record discloses that when Moss, Sr., wedded Amelia Cormier in 1856 the only property then brought into the marriage was by the husband, and that consisted entirely of the assets of the first community, as shown by the inventory taken just following the second marriage. Moss, himself, testifies that this property was used, consumed, expended, or otherwise enured to the benefit of the second community, and, with the exception of the fifteen dollar interest in land and the slave, the property was of that character which rendered its use practically unavailing if not consumed and expended, or the substance thereof changed in the use. C. C. 534, 536.

Those interested in the second community are, certainly, in no position to dispute that Moss, Sr., was, at the beginning of that community, the owner, *quoad* the second community, of the property of the first community. And the second community was entitled to the enjoyment of all the property and effects belonging to the husband at the time of the second marriage.

Depas vs. Riez, 2 La. Ann. 31.

But when the time comes for the settlement of the community affairs, the husband is entitled to claim as a debt due him the value of the separate property he brought into the community and which was used for the benefit of the same and expended and consumed in its use.

And that is this case.

The community between Moss, Sr., and his second wife was properly the subject of settlement in the succession of the second wife, where all the community property had been inventoried and sold, and where its proceeds are the subject of distribution.

Before this distribution can take place, there must be deducted from the sum total of the proceeds the community debts, including the debt due the husband as above.

While Moss, the father, owes to his children of the first marriage the value of the movable property of theirs converted by him to his own use, *with interest from the time his usufruct thereof ceased,* he has claimed against the second community, on the value of the separate property he brought into it, legal interest only from the dissolution of the second community, which was the date of the death of the second wife, April 1, 1874. He will be held to this. No opinion is expressed as to whether he might or might not be, in law, entitled to interest from an earlier date.

None of the prescriptions urged are applicable as against the indebtedness due him by the second community.

When the second wife died, Moss owned in his own right, subject of course to payment of community debts, one-half of the property pertaining to the community, and became the usufructuary of the other half owned by the children and heirs of the second wife.

This community has continued unsettled to the present time, the surviving husband and father remaining in possession of the property. He qualified as tutor of the children of the second marriage and became administrator of the second wife's succession.

Under these circumstances, prescription was suspended.

Morris' vs. Cain, 39th La. Ann. 722; Succession of Farmer, 32nd La. Ann. 1037; Goux vs. Moncla, 30th La. Ann. 743.

Lavinia Moss (now the wife of D. H. Lyons), one of the children of the first marriage, opposed the account of the administrator. Her opposition was in part sustained. She, nevertheless, took an order of appeal, but has not perfected her appeal by filing the bond required.

In this court, however, she has filed an answer and motion to amend the judgment.

Her opposition must, in view of the position herein taken with reference to the legal rights of the children of the first marriage, be dismissed.

One of the grounds of the opposition of Oliver H. Moss and certain of the other heirs of Amelia Cormier to the administrator's account was that he had not accounted for a sum of money (some $544.55) which it was alleged he had collected from the succession of Alexander Cormier, Sr., being the inheritance of his nine children of the second marriage by right of representation of their deceased mother, Amelia Cormier.

This ground of opposition was disposed of in the judgment appealed from by a reservation to opponents of their rights in this regard against their father, J. V. Moss, Sr.

Complaint is made of this here and it is asked that the judgment be corrected by ordering the administrator to account to the heirs for moneys received from their said grandfather on behalf of their mother.

There is no reason why the father, who is both tutor of the children and administrator of their mother's succession, should not account in this proceeding—being his account as administrator—to her heirs for this money received by him as their inheritance by right of representation of their mother. It can be settled herein and should be settled herein. A multiplicity of suits is to be avoided.

It is considered that the interests of justice require this case should be remanded.

For the reasons assigned, it is ordered that the judgment appealed from be avoided and set aside; that the opposition of Lavinia Moss be dismissed at her costs; that this cause be remanded for readjustment and restatement of the administrator's account in accordance with the views of this opinion, and for further proceedings according to law; and that in a supplemental account to be presented J. V. Moss, Sr., do account for and settle with the heirs of Amelia Cormier for all moneys and property collected or received by him from the succession of Alexander Cormier, Sr., for them on their mother's behalf, whether received by him individually, or as tutor, or administrator.

It is further ordered, etc., that the costs of this appeal and those of the lower court, other than the costs accruing on the opposition of Lavinia Moss, be paid out of the funds pertaining to the community which existed between J. V. Moss, Sr., and Amelia Cormier.