## PRITCHARD & THOMPSON ADVERTISING AGENCY, Inc., v. PEREIRA et al. *
### No. 14253.

Court of Appeal of Louisiana. Orleans.
April 24, 1933.

Stirling Parkerson, of New Orleans, for appellant.

Spencer, Gidiere, Phelps & Dunbar and Louis B. Claverie, all of New Orleans, for appellees.

HIGGINS, Judge.

Plaintiff sued the defendants Louisiana Baking Corporation and George E. Pereira, in solido, for the sum of $800, alleged to be due under a written contract for advertisment dated March 26, 1930. The defense is that the amount claimed is due only by the Betty-Lou Bakeries, Inc., the Louisiana Baking Corporation having discharged its part of the joint obligation, and that Pereira is not individually liable because he signed the contract in the capacity of president of the above-named corporations.

There was judgment in favor of the defendants, dismissing the suit, and plaintiff has appealed.

The record shows that the plaintiff is engaged in the advertising business, and that Betty-Lou Bakeries, Inc., of Houston, Tex., conducted a bakery business. On March 26, 1930, the plaintiff, through Kenneth Thompson, its vice president, submitted on its printed stationery an offer to Louisiana Baking Corporation of New Orleans, La., for certain advertising through the means of signs along the public highways in the vicinity of New Orleans and along the highway between New Orleans and Houston, Tex., for a consideration of $200 per month for a period of 24 months. The offer was executed in duplicate, and was accepted by George E. Pereira, who was president of both corporations. The duplicate retained by Mr. Thompson was signed as follows:

"George E. Pereira
"Betty-Lou Bakeries
"Louisiana Baking Corporation."

The copy left in the possession of Mr. Pereira is signed as follows:

"George E. Pereira, Pres.
"Betty-Lou Bakeries, Inc.
"Louisiana Baking Corporation."

The plaintiff contends that the agreement constitutes a solidary obligation of the Louisiana Baking Corporation and George E. Pereira. The defendant argues that the agreement is a several obligation of the Betty-Lou Bakeries, Inc., and Louisiana Baking Corporation, and that Pereira did not obligate himself as an individual, but signed in his capacity as president of both corporations. Plaintiff counters by saying that Mr. Kenneth Thompson, who negotiated the contract with Mr. Pereira, was under the impression and led to believe that the Betty-Lou Bakeries, Inc., and the Louisiana Baking Corporation were one and the same company, which operated and maintained an office in New Orleans, Houston, Tex., and Nashville, Tenn., and that the suffix "Pres.," after Pereira's name, and the suffix "Inc.," after "Betty-Lou Bakeries" on the duplicate original retained by Pereira, were added to the document after the contract was signed; it being the intention of the parties that Pereira was signing individually as a guarantor.

The evidence shows that Betty-Lou Bakeries, Inc., was a corporation organized under the laws of Texas and engaged in the bakery business at Houston. The Louisiana Baking Corporation was organized under the laws of Delaware and conducted the same kind of business in New Orleans. The stockholders

*Rehearing denied May 22, 1933.

of the two corporations are composed of different individuals, but the president and secretary of the Texas and Delaware companies are the same. The Nashville company was also in the bakery business, and the plaintiff was one of its stockholders. The Louisiana Baking Corporation owned the copyright on the words "Betty-Lou," and leased the right to use this trade-name to the Tennessee and Texas companies.

On June 7, 1928, the plaintiff executed an order for the Betty-Lou Bakeries, Inc., in Houston, Tex., for a half-tone cut of a picture of its building, and the invoice covering the work was sent by the plaintiff to the Betty-Lou Bakeries, Inc., at No. 2019 Congress street, Houston, and paid by that company on June 14, 1928.

On September 14 and 18, 1928, there appeared in the "Houston Dispatch" certain newspaper advertisements which contained in bold print the words "Betty-Lou Cake, baked in Houston," and "Betty-Lou Bakeries, Inc." These advertisements were written and prepared by the plaintiff company at the request of Betty-Lou Bakeries, Inc., of Houston, Tex.

Mr. Thompson, in his testimony, admits that in his capacity as vice president on January 10, 1929, he entered into a written contract with Betty-Lou Bakeries, Inc., to furnish outdoor advertising in Houston, Tex.

Under the written order of the Betty-Lou Bakeries, Inc., the plaintiff, on September 10, 1929, furnished three thousand cardboard store hangers, and the invoice covering same was sent by the plaintiff to Betty-Lou Bakeries, Inc., at Houston, Tex., and paid by that company's check on November 15, 1929.

Under date of December 31, 1928, an invoice covering outdoor advertising was addressed and sent to the Betty-Lou Bakeries, Inc., by the plaintiff, amounting to $202.40, which was paid by check of Betty-Lou Bakeries, Inc., on March 1, 1929. In 1929 plaintiff also prepared two pages for a four-page circular which showed that the outstanding picture of the group was the building occupied by Betty-Lou Bakeries, Inc., at Houston.

In addition to the above transactions, a written contract was entered into between the plaintiff and the Betty-Lou Bakeries, Inc., on October 1, 1928; the agreement being signed "Betty-Lou Bakeries, G. E. Pereira." The plaintiff, acting under this agreement, sent invoices, each for the sum of $200 per month, to the Betty-Lou Bakeries, Inc., at Houston, which were all paid up to and including the invoice of September 30, 1929, by checks of the Betty-Lou Bakeries, Inc. Mr. Thompson, on cross-examination, admitted this fact, but said he was not familiar with the details, as it was a question of bookkeeping. The invoices for $200 each for advertisements under this agreement of October 1, 1928, covering the months of October, November, and December of 1929, and January and February of 1930, amounting to the sum of $1,000 were unpaid when the plaintiff company submitted the proposal or offer of March 26, 1930, which forms the basis of the contract upon which the present suit is brought.

On March 26, 1930, the same day on which the contract sued upon in the instant case was signed, Mr. Thompson agreed with Mr. Pereira to accept for the five unpaid invoices a note for the sum of $1,000 signed by Betty-Lou Bakeries, Inc. It appears that Mr. Fereira signed his name under the corporation name without the suffix "Pres." on this note. In his testimony Mr. Thompson states that the note was put in the safe, and later, when he heard that the Betty-Lou Bakeries, Inc., of Houston, Tex., had failed, he looked at the note, and was amazed to see that it was a note of the Betty-Lou Bakeries, Inc., and not the Louisiana Baking Corporation.

The preponderance of the evidence also shows that on March 26, 1930, the day the contract in question was signed, Mr. Pereira caused his office to prepare and deliver to Mr. Thompson, or to plaintiff's office, two orders, one signed by the Louisiana Baking Corporation and the other by the Betty-Lou Bakeries, Inc., which directed that the 24 monthly payments should be divided in the proportion of $100 per month to each of the respective corporations, and that certain designated signs would be kept in repair by the Betty-Lou Bakeries, Inc., and, after the expiration of the contract, to belong to that corporation, and that there was a similar provision in the other order with reference to the Louisiana Baking Corporation. Eleven invoices were sent to each of the respective corporations in accordance with these orders. When the Texas company was several months in arrears on payments due under this last contract, the plaintiff sent the Louisiana Baking Corporation invoices for $200 per month, which were promptly returned as being erroneous, and subsequently the plaintiff accepted the remittance of $100 per month from Louisiana Baking Corporation. It appears that this latter corporation paid its obligation in full. At the time of filing the instant suit, certain installments had matured amounting to $800 which the Betty-Lou Bakeries, Inc., had failed to pay because of its financial condition, which forced it into bankruptcy in February, 1931. The present suit was brought on March 25, 1931.

■ From the above it is clear to us that Mr. Thompson knew, or should have known, and that the officers of plaintiff company knew, or should have known, that the Betty-Lou Bakeries, Inc., was a separate and distinct corporation from the Louisiana Baking Corporation, and that each of these companies was responsible for its own respective debts. We do not believe that Mr. Thompson,

or any officer of plaintiff company, was justified in assuming that these were one and the same corporation, or that anything was done by the officers of either of these corporations to deceive or mislead him or his associates into believing that one was a subsidiary or branch of the other.

On the question of whether or not the signatures to the copy of the contract left in the possession of Mr. Pereira were altered by adding suffixes to them, Mr. Thompson testified that at the time he signed the duplicates he did not see these suffixes on the document, but on cross-examination stated:

"Q. At the time you left 'Defendant-1' (the contract) in Mr. Pereira's possession, did the suffixes 'Pres.' and 'Inc.' appear after 'Pereira'? A. I might have been with him a half hour after that, but when I signed, it was not on it. I would not say that when I left it was not on it, because I was there a half hour or more, probably, discussing other things. I could not swear to that. * * *

"Q. You mean to insinuate that the document has been subsequently changed, is that what you mean? A. That is the only thing I can think of."

The plaintiff also introduced the testimony of Professor Williamson to the effect that, as a result of many years' experience as a chemist, he was able to discern fine distinctions in colors of writing in ink, because exposure to the atmosphere causes oxidation of certain ingredients in the ink, the ink at first appearing blue and gradually turning almost black, and then black, as the oxidation progressed. From looking at the writing of the abbreviation "Pres." on the document in question, he was of the opinion that it was either not placed there at the time of the other writing, or was placed there with some other kind of ink. With reference to the suffix "Inc.," he could not perceive sufficient difference in shade or color of the ink to express an opinion as to whether it had been written at a different time or with different ink than the other writing.

Mr. Pereira testified that the document was signed at one and the same time, and that the suffixes were added at that time, and stated that failure to put the suffixes on the copy retained by Mr. Thompson was a pure oversight.

As we view Mr. Thompson's testimony, while he states that the suffixes were not placed on the documents at the time of the signing, the cross-examination of the witness, and particularly the above-quoted parts of his testimony, show that he was quite uncertain about the matter. If Professor Williamson's theory is correct that he can discern the difference in color of ink writing because of the oxidation process, there is no reason why he should not have expressed an opinion as to the color of the suffix "Inc." The suffix was either placed on the document at the time of signing, or subsequent thereto. If it was placed upon it subsequently, and Mr. Williamson's theory and ability to distinguish between ink writing with respect to the time it was written are dependable, then he should have been able to say whether or not the suffix "Inc." was placed on the document at the time of the signing, or thereafter.

We observe that the note for the sum of $1,000, which was given by the plaintiff to Betty-Lou Bakeries, Inc., is signed by Mr. Pereira without any suffix to his name to indicate that he was signing in his capacity as president and not individually. Plaintiff makes no contention that he signed as a guarantor on that obligation. We may also mention that in the contract between the plaintiff and Betty-Lou Bakeries, Inc., of October 1, 1928, Mr. Pereira again signed his name without any suffix, and no contention was made that he was a guarantor, or in solido liable on that contract.

■■ The trial court found that the defendant had successfully shown that the suffixes were placed on the document at the time of signing, and we see no reason to disturb his finding of fact in that respect. Even if we did not find as a fact that the suffix "Pres." was placed on the contract at the time of signing it, it is difficult to follow plaintiff's reasons why we should hold Mr. Pereira liable as a solidary obligor. The contract does not contain any verbiage which even remotely would indicate that it was intended that he had signed individually as a guarantor or surety, so as to make himself liable in solido. While Mr. Thompson stated that, on account of both bakery corporations being in arrears, he insisted upon security, on cross-examination he testified as follows:

"Q. Did he (George E. Pereira) give you any assurance as to the carrying out of this second contract? A. Well, only those assurances which were on the contract, which I accepted as being what they are.

"Q. What I mean to say was, was there any understanding between you as to the motive of signing his own name as he did? A. No, it was not discussed. We were rotarians together and I didn't think anything like that was necessary."

Mr. Pereira denies that he ever discussed the matter of signing the contract individually and as a guarantor with Mr. Thompson.

"An obligation in solido is not presumed; it must be expressly stipulated. This rule ceases to prevail only in cases where an obligation in solido takes place of right by virtue of some provisions of the law." R. C. C. art. 2093.

"Suretyship can not be presumed; it ought to be expressed, and is to be restrained within the limits intended by the contract." R. C. C. art. 3039.

See, also, Old et al. v. Fee, 8 Mart. (O. S.) 14; New Orleans Gas Light & Banking Co. v. Paulding, 12 Rob. 378.

In the light of these articles of the Code, it is clear to us that plaintiff has failed to show that Mr. Pereira obligated himself as a guarantor or surety on the contract.

From a careful reading of the record and the reasons for judgment of the trial court, we are of the opinion that the judgment appealed from is correct, and it is therefore affirmed.

Affirmed.