## FISHER v. NEW ORLEANS COFFEE CO., Limited, et al.*

### No. 14704.

Court of Appeal of Louisiana. Orleans.

June 11, 1934.

Lazarus, Weil & Lazarus, of New Orleans, for appellant.

Denegre, Leovy & Chaffe and J. H. Morrison, all of New Orleans, for appellees.

WESTERFIELD, Judge.

This is a suit on a letter of guaranty for $1,539.15. There was judgment below in favor of defendant, and plaintiff has appealed.

The facts in the case, as developed in the record, are as follows:

The Assumption Sugar Company, Inc., owned and operated a sugar plantation and sugar refinery near Napoleonville, La. It had for several years a contract with the Celotex Company for the sale of its waste product, or bagasse. This contract the Celotex Company desired to cancel and, in

1931, it paid the Assumption Sugar Company $15,000 for agreeing to its cancellation. In order that the bagasse might be utilized the Sugar Company concluded to convert the oil-burning equipment of its sugar refinery to the use of bagasse as fuel. With the idea of having the change made, it consulted the Engineering Sales Company, Inc., of New Orleans, a corporation with considerable experience in that character of work. That company was unwilling to undertake the conversion without some guaranty, because of its belief that the credit of the Sugar Company was not sufficient to justify it in undertaking the work; whereupon the New Orleans Coffee Company, which had for some time been advancing funds to the Sugar Company, in order to permit it to operate and produce sirup, which the Coffee Company purchased, was asked to guarantee the cost of the undertaking. The Coffee Company, represented by Mr. Edwin L. Powell, at first demurred because the cost of the change, at first estimated at $21,000, exceeded the $15,000 obtained from the Celotex Company by $6,000 and Mr. Powell was not willing to obligate his company for this amount. Finally, however, an agreement was entered into whereby the $15,000 was turned over to Mr. Powell upon the condition of his making the necessary guaranty. The following letter of the New Orleans Coffee Company, addressed to Mr. Walter Moses, the vice president of the Engineering Sales Company, under date of July 24, 1931, is a statement of the agreement:

"New Orleans, July 24, 1931.

"Engineering Sales Co., Inc.,

"New Orleans, La.

"Attention: Mr. Walter Moses.

"Gentlemen:

"Referring to our conference yesterday afternoon at which were present Prof. Guell, Stephen G. Munson, Aubrey Bartlett and Walter Moses; I agreed to become responsible for the payment of expenses connected with the purchase and installation of 2 300 H. P. Heine boilers, smoke stack, the moving of certain apparatus and the conversion of the present B. & W. boilers from oil burners to bagasse burners, all of said equipment being in connection with the Glenwood Sugarhouse, owned by Assumption Sugar Co. Inc; you will furnish me with an estimate covering this work of approximately $17,000.00, which figure includes your engineering fee of 10%. You are to furnish estimate of progress about every 15 days. The work is to be completed, tested and turned

over in proper operating condition in about 8 weeks from July 24th, 1931.

"In accordance with the above agreement, I have paid Walter J. Folse $1200.00 for the boilers, etc., in accordance with his proposition covering sale of same.

"The bills in accordance with above agreement and in accordance with your letter of July 23rd, receipt of which is hereby acknowledged, will be paid upon presentation by mail or in person when approved by Stephen G. Munson, Manager of Assumption Sugar Co. Inc., and attached to a draft in your favor drawn by Assumption Sugar Co. Inc., upon us.

"Yours very truly,

"New Orleans Coffee Co., Ltd.

"By E. L. Powell, President.

"P. S. By agreement, fee for engineering service is fixed at $1500.00.

"[Signed] E. L. Powell."

The Engineering Sales Company, following the conference referred to in the letter of the Coffee Company, wrote the Assumption Sugar Company under date of July 23, 1931, in part as follows:

"We wish to confirm our agreement of today, relative to our employment to supervise the installation of two (2) 300 H. P. Heine boilers for your plant. * * *

"We will handle for you the ordering of all material, having same charged direct to you wherever possible. On any material that we order out in our name, we will submit you invoice on the 1st. and 15th. of the month and these invoices are to be paid promptly by you. The payment of these invoices, together with payment for our engineering services, is to be guaranteed by the N. O. Coffee Co. and Mr. E. L. Powell."

Thereafter, on or about October 1, 1931, Mr. Moses, the vice president of the Engineering Company, asked Warren Fisher, plaintiff herein, to submit an estimate of the cost of certain necessary equipment in connection with the installation of new boilers in the Sugar Company plant. Mr. Fisher at first declined upon the ground that the Sugar Company was not a good credit risk, whereupon Mr. Moses exhibited the letter of the Coffee Company, and Fisher, interpreting the letter as an indorsement of the credit of the Sugar Company, submitted his bid of $1,988.95 and obtained the order and executed it. About a month later a payment of $449.80 was made to Fisher, leaving a balance of $1,539.15, for which payment was sought from the Sugar Company and the Coffee Company without avail, and which forms the basis of the present suit.

It is the contention of the plaintiff that the letter of the Coffee Company contains a stipulation "pour autrui" and evidences an obligation on the part of the New Orleans Coffee Company, Limited, and Edwin L. Powell, individually, in favor of those who have accepted the stipulation in their favor by acting upon it. On the other hand, the defendants take the position that the letter can be regarded only as guaranteeing the Engineering Company against loss on purchases which it made direct, and that no personal liability on Powell's part was intended or expressed.

■ Considering, first, the personal liability of Mr. Powell, we observe that a solidary obligation is not to be presumed. Article 2093, Rev. Civ. Code; Pritchard & Thompson Advertising Agency v. Pereira (La. App.) 147 So. 507. From all the facts and circumstances surrounding the transaction we conclude that there was never any intention on the part of Mr. Powell to bind himself. Moreover, the only signature to the letter is that of the New Orleans Coffee Company, Limited, by E. L. Powell, president. His name does not appear as an individual. We concur in the view of the trial court to the effect that Mr. Powell is not personally liable.

Article 1890, Rev. Civ. Code, reads as follows:

"A person may also, in his own name, make some advantage for a third person the condition or consideration of a commutative contract, or onerous donation; and if such third person consents to avail himself of the advantage stipulated in his favor, the contract can not be revoked."

Counsel in brief quote the following from Menard v. Scudder, 7 La. Ann. 385, 56 Am. Dec. 610:

"The true doctrine, we are inclined to believe, lies between these extreme opinions; and we think it was very judiciously observed by Dewey, J., in Mussey v. Rayner, 22 Pick. [Mass.] 228, that a safe rule of construction would be, to give the instrument that effect, which shall best accord with the intentions of the parties, as manifested by the terms of the guaranty, taken in connection with the subject matter to which it relates, and neither enlarging the words beyond their natural import, in favor of the creditor, nor restricting them in aid of the surety. See, also, Bell v. Bruen, 1 How. 187, 11 L. Ed. 89.

"In furtherance of this rule of construction, we would add, that for the nature and purposes of mercantile guaranties, and the

circumstances under which they are usually prepared, it seems improper to subject them to the standard of critical nicety, which might, with more reason, be applied to instruments usually drawn by professional men. Mercantile guaranties are usually written by the guarantor himself, and are often brief in their language, and inartificial and loose in their form. And in such cases, a nice and technical construction, might rather confuse, than aid the mind, in its search for the true intentions of the writer. We should endeavor, if possible, to put ourselves in the condition of the parties, and so seek to ascertain, from the words used, what were the ideas which existed in the writer's mind, and which he desired to convey to the person, or class of persons, to whom the letter would probably be exhibited; and we should also consider, what effect he ought reasonably to expect the words used, would produce in the minds of such persons. See, also, Civil Code, arts. 1948, 1897."

See, also, Moore & Co. v. Clapp & Gidiére, 36 La. Ann. 690; Hornor v. McDonald et al., 52 La. Ann. 409, 27 So. 91.

In considering the letter of guaranty in the light of the cited text and the facts in this record, we are of opinion that the Coffee Company intended to guarantee the cost of changing the boilers of the Sugar Company, so as to permit of the use of bagasse as fuel, to the extent of $17,000, which was only $2,000 more than the cash deposited with it for that purpose. If there was any intention to limit the guaranty to the amount actually expended by the Engineering Company, plus their commission, as defendant contends, why mention the $17,000 at all, since the record discloses that the Engineering Company bought only a few items of materials required and that because it could buy them at a discount, which it allowed the Sugar Company the benefit of. The entire cost of materials thus purchased, plus the commission of the Engineering Company, amounted to far less than $17,000, as the record shows. Mr. Moses of the Engineering Company testified that he understood that the guaranty included the entire cost of the work and induced plaintiff to sell his materials upon the faith of that understanding, exhibiting defendant's letter as evidence of the fact. To hold otherwise would permit defendant to apply the difference between the cost of the Engineering Company purchases, plus the commission, and the $15,000, to an old account, as, according to the record, it actually did, a result, it appears to us, never contemplated by the parties to the agreement.

A payment of $1,200 was made by the Coffee Company to Walter J. Folse for boilers "in accordance with the above agreement," as appears in the letter of guaranty. The boilers which Folse sold were not bought by the Engineering Company, and this transaction, made at a time when the agreement had just been confected, is an indication that the defendant itself originally construed its agreement in a manner inconsistent with its present position.

On the whole, we believe that the contract of guaranty executed by the defendant contained a stipulation "pour autrui" and that the plaintiff, Fisher, in acting upon the faith of that stipulation in the sale of his merchandise, accepted such stipulation and availed himself of its advantage, with the result that the defendant is bound and that law and equity permit of no other conclusion.

For the reasons assigned the judgment appealed from is annulled, avoided, and reversed, and it is now ordered that there be judgment herein in favor of the plaintiff, Warren Fisher, and against the defendant, New Orleans Coffee Company, Limited, in the full sum of $1,539.15, with interest from October 28, 1931, until paid, and all costs.

Reversed.