The judge's statement that there was no such proof offered was accepted as correct.

In the case before us for decision, it is not urged that there was the least attempt toward proving an overt act.

The defendant was represented by counsel in the lower court. We have not been favored with a brief for defendant in this court.

We, after a careful examination of the issues, found no ground upon which to set aside the verdict, sentence, and judgment of the court.

For the reasons assigned, the law and the evidence being with the state and against the defendant, it is ordered, adjudged, and decreed that the verdict, sentence, and judgment are affirmed.

---

(34 South. 301.)

No. 14,054.

SARRAZIN et al. v. ALFRED A. ADAMS & CO. et al.*

(Dec. 1, 1902.)

BUILDING CONTRACT—PERFORMANCE—DELAY
—ESTOPPEL—DAMAGES.

1. In matter of the execution of a building contract the defendant builders are liable for failure in not following plans and specifications.

2. Although the building was incomplete, the plaintiff chose to go into possession and remain in possession while the builders were at work.

Plaintiff is estopped from recovering for delay in delivering the property as claimed.

3. The failure to build according to the contract and plans and specifications of the builders to the extent shown was an open and active violation of the contract.

4. Part of the material and workmanship were not what they should have been under the terms of the contract and the plans and specifications annexed.

5. The balance due by the owner to the builders is deducted, and demand for the same is rejected. The amount allowed to plaintiff in addition to this balance is disallowed.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Mrs. J. Rene Sarrazin and others against Alfred A. Adams & Co. and others. Judgment for plaintiffs, and defendants appeal. Amended.

Solomon Wolff and William A. Wenck, for appellants. Paul Louis Fourchy and Branch K. Miller, for appellees.

BREAUX, J. Plaintiff claims damages in the sum of $2,575, caused, she alleges, by defendant's failure to comply with his con-

*Rehearing denied April 27, 1903.

tract entered into by him to build her a dwelling house.

The defendants, in their answer, denied all indebtedness, and reconvened for a balance of $1,170.50.

The record discloses that defendants, as contractors and builders, constructed a dwelling house for plaintiff, and bound themselves to build this house according to plans and specifications made part of the contract as the work on the house progressed, and that plaintiff ordered certain extra work to be done, which did not fall within the terms of the contract.

The contract provided $2,800 as the amount to be paid by plaintiff for the material and workmanship.

The extra work claimed by defendant amounts to the sum of $370.50.

In her suit plaintiff sets out that the building has not been constructed in a workmanlike manner; that the foundations are weak, and have given away to the pressure, and the building has settled several inches in the center, carrying the floors, causing fissures and breaks in the plaster, and that the building is, in consequence, not secure, safe, and comfortable as a dwelling; that the defect in the center cannot be repaired for less than $1,000 in addition to the loss of the use of the house whilst being repaired or reconstructed; that the roof leaks, the rafters are defective; that the slates on the roof were not properly laid and fastened; that the lumber used in the construction of the building, the tiling in the premises, the paving and drainage, the cement and mortar, the plaster and the paint were not such as should have been used, and that, in consequence, plaintiff's building is of very little, if of any, value.

The amount of plaintiff's claim is composed of the following items:

1. The contract provided that defendant was to pay to plaintiff $5 per day for every day's failure to deliver the house after the 10th of December, 1900—104 days at $5 per day..... $  520
2. Settling of the house...............  1,000
3. Other defects .....................   500
4. Defects in painting................   250
5. Floors ............................    25
6. Stairway .........................   200
7. Moving and rent of house while all this repairing is to be done........    80
                                       _____
   Total ........................ $2,575

The learned judge of the district court with characteristic, painstaking care analyzed the testimony of the witnesses. In his written opinion he says: That through "some error" in laying the foundations, especially in the chimneys, the floors in most of the rooms inclined or sloped, and prevented the furniture from standing upright. The furniture leaned forward, backward, or to the side, according to its position on the floor. The floors were unevenly laid, and badly warped. There were no carpet strips on them, and rain beat under the doors into the rooms. Through some error, the staircase was constructed in such a way that a person of ordinary height could not go up or down without striking his head against the ceiling. Plaintiff and the members of her family had to stoop every time they went up or down stairs. Some of plaintiff's furniture could not be taken through the opening. Most of it was taken up before the railings were placed on the stairs and cannot now be brought down without taking away the railings, owing to the irregular settlement and inferior material. The plastering in the house is badly blistered. The doors and window frames were out of level. The windows could not be opened without the aid of tools or great exertion. The transoms fitted so badly plaintiff had to cover them with paper to keep out the wind. The painting was inferior. There were other defects, it seems. The addition floors slant like a ship's decks in a storm, as we are left to infer.

The court decreed that the plaintiff was released from paying any further amount on the contract and for extra work, and further allowed plaintiff damages in the sum of $500, and rejected defendant's reconventional demand for balance claimed on the contract and for extra work.

From the judgment defendant appeals.

We take up for decision the first legal principle urged by defendants, whose first contention is that they have never been placed in mora. Unquestionably, damages cannot be recovered without a placing in default, if the violation was passive, and, if active, default is not necessary. We think the violation was active, and default unnecessary, for the reason that, in our view, there was an active disregard by defendants

of the plans and specifications. The general condition of the house, made evident by preponderance of the testimony, is such as to render it impossible reasonably to conclude that the violation is passive. There are too many defects to characterize them as passive. There are deficiencies in the roof, in the foundation, and in the body of the building. The testimony shows that they are not slight and immaterial, but that, on the contrary, they impair the usefulness of the entire house. Such absolute want of performance in a contract in which one binds himself "to do" certain work, and in regard to which the failure "to do" shows great disregard for the terms of the contract, cannot well be considered in any other light than an absolute violation. The failure to deliver a house (under the circumstances here) manifestly not according to contract constitutes an open and active violation.

We pass to the proposition urged by plaintiff that she had the right to use the money she owed to the defendants (that is, the balance due by her) to remedy the defects. To that extent it occurs to us that plaintiff's claim is sustained by the testimony.

Defendants had drawn the plans and specifications. They knew that plaintiff wished to have a tenantable house constructed. She trustingly paid them a large portion of the contract price a day or two after defendants had commenced to work in constructing the building. They owed it to her to use only good, merchantable materials, and to do the whole work in a workmanlike manner. In this there was failure. Instead of the material and the work for which the specifications called, the material, in some respects, must have been of an inferior quality, for on no other theory can the unsatisfactory appearance of the building be accounted for. The work was not satisfactory, as many places were not level, and did not fit. There was, instead, a misfit. Roof leaking, not a door nor window that closed properly, plaster breaking and falling loudly, suggestive of a gunshot, we are told by the testimony; the floor slanting, and the foundation sinking. While it may be the testimony was united in somewhat overdrawing the whole situation, we, none the less, are of the view that defendants should not recover any further amount of the plaintiff.

Unquestionably "the laborer is worthy of his hire." He must, however, in order to receive it, show that performance has at least been about equal to his promise, accepted in good faith, and by which plaintiff seems to have been greatly influenced.

This brings us to a consideration of the extent of the damages suffered by plaintiff, and as to whether they should exceed the $1,170.50 claimed by defendants, $1,000 of which plaintiff admits would have been due by her if the work had been completed according to contract. We do not think she should recover any further amount than these amounts.

These are our reasons:

She voluntarily took possession of the house in its unfinished state, occupied it, and was occupying it when the suit was tried. There is, in consequence, no ground for allowing so-called "demurrage." She not only went into possession, but urged no objection at the time. She was not estopped from claiming damages, but she must be held to be estopped from claiming demurrage.

We have considered the other defects. We are not impressed by the testimony referred to to sustain the claim for the additional $500 to be awarded as damages for the following reasons: There was some dilatoriness on part of plaintiff in pointing out the defects. Many of them surely were apparent. There was unwillingness to permit defendants to attempt to make repairs. In all probabilities the repairs they offered to make would not have amounted to much, yet they had some right to make the attempt. Plaintiff's agent refused to permit defendants to make the least attempt in that direction.

Again, on that subject there is no deficiency of material. Not only the body of the house is standing, but the house itself, though sadly in need of repairs, it is true, is occupied, and has been occupied since it was delivered. The materialmen have testified to the value of materials.

Taking into account the probability of exaggerated estimate, we think that the amount should be restricted to the balance due by plaintiff. All agree that the house can be repaired. It strikes us that some $1,100, the sum allowed by the judgment, is enough to repair a house which was originally to cost $2,800.

For these reasons the judgment appealed from is amended by taking therefrom the words "individually and in solido" for the sum of $500, with 5 per cent. interest from rendition of judgment "until paid," and in all other respects the judgment is affirmed; the costs of the appeal to be paid by appellees.