**ANDERS v. J. L. EVANS & CO., Inc., et al.**

No. 5781.

Court of Appeal of Louisiana.
Second Circuit.

Dec. 9, 1938.

Rehearing Denied Jan. 10, 1939.

J. Norman Coon, of Monroe, for appellant.

Theus, Grisham, Davis & Leigh and Fink & Fink, all of Monroe, for appellees.

TALIAFERRO, Judge.

Plaintiff and defendant, J. L. Evans & Company, Inc., of Monroe, Louisiana, executed a written contract on November 20, 1935, whereby, for the price of $175, defendant obligated itself to treat for termites two buildings of plaintiff in said city, "and to eradicate all subterranean termites therein and all non-subterranean termites in open construction therein, during a period of five years from" date of the contract. Defendant, who is denominated in the contract as "Termite Contractor", will hereinafter be likewise referred to by us.

The Termite Contractor was obligated *"to use first-class materials and workmanship"* in the performance of the contract. The contract states that $85 of the price was paid "cash". The remainder was to be paid in nine monthly installments of $10 each. Five of the installments were paid.

As a condition precedent to engaging in the business of termite eradication, and as

was required by Act No. 57 of 1930, Louisiana Legislature, the Termite Contractor executed bond for $500 in favor of Harry D. Wilson, Chairman of the Horticultural Commission, whereon American Employers' Insurance Company is surety, the condition of which is that if said principal "shall honestly conduct his business of termite extermination", the obligation would be null and void, otherwise to remain in full force, etc. The quoted condition of the bond literally follows the language of the act. The right is given in the act to any person having a cause of action against the principal to join it and the surety in the same suit to enforce such cause of action. The bond was executed prior to date of the contract between plaintiff and said principal.

The Termite Contractor, following execution of the contract with plaintiff, promptly undertook its fulfillment. Its alleged failure to efficiently do so is the basis of this suit against it and its surety. Suit was filed May 27, 1937.

It is alleged by plaintiff that on or about November 21, 1935, the Termite Contractor advised him that it had fully completed its obligation under the contract; but that within a week thereafter he discovered a great number of termites in said buildings and showed same to said Termite Contractor and requested it to execute the contract according to its terms by exterminating said termites; and that it has not done so. Additional demands of like character are alleged to have been made from time to time. It is further alleged that the Termite Contractor did attempt to eradicate termites from petitioner's buildings, and that in doing so, did apply "some kind of material and performed some type of service in connection therewith, but that it failed then and has failed continuously since then to eradicate any and all of said termites"; and that it thereby breached its contract with petitioner. Amplifying these general allegations, it is further alleged:

" * * * that the Termite Contractor used faulty material and unskilled workmen to perform said work; that it did not use first-class materials and first-class workmen as agreed. That it was grossly *negligent* in attempting to perform said contract when it knew or *should have well known* that the materials which it was using and the manner in which it was doing the work did not, and would not eradicate any of or all of said termites * * *.

That it did said work in a *negligent manner* which included in not properly removing certain timbers from said buildings, as agreed, and by *not applying chemicals which would eradicate the termites,* and by not applying said chemicals at all of the places as agreed." (Italics ours.)

Plaintiff sues to recover the money paid by him to the Termite Contractor and also for an amount as damages done one of his chimneys because of the incompetent and negligent manner employed in its attempt to fulfill the contract.

The Termite Contractor and its surety each filed exceptions of no cause and no right of action. The exceptions of the Termite Contractor were overruled. The ruling is not now before us. Prior to passing on the surety's exceptions, plaintiff filed an amended petition. It was objected to as coming too late. We do not think so. After reciting therein, inter alia, that the bond above mentioned, a copy of which is attached, was given to guarantee that the principal "shall honestly conduct its business of termite extermination", and that it was in full force and effect when the contract between plaintiff and the principal was signed, the amended petition further declares, viz.:

" * * * that said bond protects your petitioner against all losses and damages sustained by reason of J. L. Evans & Company, Inc.'s failure to perform its contract with your petitioner as agreed, and by reason of said termite contractor's acceptance and receiving of petitioner's money without giving him any consideration therefor, that said bond inured to petitioner's benefit, and that said principal and surety are liable in solido unto your petitioner for all sums and on all accounts as set forth in his original petition.

"Petitioner further shows that J. L. Evans & Company, Inc., *did not honestly conduct its business as a termite extermination contractor, and especially in view of its dealings with your petitioner;* that said company accepted One Hundred Thirty-five and no/100 ($135.00) Dollars from him without giving any consideration therefor, *and that said company knew or should have known that its method and manner of treatment of petitioner's houses would not exterminate the termites."* (Italics ours.)

The surety excepted again to the original petition and also to the amended petition on the ground that singly or together they did not disclose a right or cause of action.

Both exceptions were sustained. Plaintiff appealed therefrom.

Appellee argues that its exceptions are well founded for two reasons, viz.:

1. That it was only obligated to exterminate two types of termites in plaintiff's buildings, to-wit; (a) Subterranean; (b) Non-subterranean in open construction; and that the petition does not disclose that the undestroyed termites were of either type.

2. That the bond sued on was not intended to nor does it, as a matter of law, guarantee the faithful performance of the principal's contracts; but was intended to guarantee that it would conduct its business honestly with all patrons, and that the petition does not disclose that appellee's dealings with plaintiff violated the terms and conditions of the bond.

■■ We think the second ground well taken and shall only consider and discuss it.

It seems fairly clear that in preparing his first petition plaintiff proceeded on the theory that the bond in question was sufficiently comprehensive in scope and legal effect to protect him from loss as against the Termite Contractor's negligence in the performance of the contract between them. If so, he acted erroneously. The bond is not susceptible of such interpretation, nor is the law pursuant to which it was given. It did not guarantee the faithful performance of the contract. If the Legislature had intended that it be so conditioned, it would have said so in no uncertain terms as it has done in acts governing building contracts and contracts for the construction of highways, etc. Lack of confidence, perhaps, in his original position, probably prompted the filing of the amended petition. In the amended petition, it is asserted that the bond protects plaintiff "against all losses and damages sustained" by reason of the Termite Contractor's "failure to perform its contract", and it is repeated that it "knew or should have known that its method and manner of treatment of petitioner's houses would not exterminate the termites". These allegations are in substance and effect identical with those in the original petition. However, the additional allegation is made in the amendment that the Termite Contractor "did not honestly conduct its business", etc., in view of its dealings with plaintiff. The bare allegation that the business was not honestly conducted, of course, is a legal conclusion; but, says the pleader, it acquired that quality through and on account of the character of its alleged dealings with him. These dealings, the petitions declare, are that the Termite Contractor *"knew or should have known* that its method and manner of treatment * * * would not exterminate the termites", and that it *"knew or should have well known* that the materials which it was using and the manner in which it was doing the work" would not eradicate all the termites.

■ The word honest is defined by Webster as—"Fair and candid in dealing with others; true; just; upright. Free from fraud; equitable." Honesty is the adverb.

Conduct, as employed in the Act and the bond, means—"To manage; carry on".

Therefore, to conduct a business honestly, means that such business shall be carried on or managed fairly, free of fraud or fraudulent practices in dealing with others.

■ It would follow that if the Termite Contractor endeavored to circumvent his obligations under the contract by knowingly using chemicals of an inferior quality, impotent to accomplish the desired results, its action would surely be unfair, unjust and fraudulent; therefore, dishonest. The same may be said of its action if it knowingly employed incompetent and unskilled workmen to apply said chemicals. But plaintiff does not unqualifiedly charge that the Termite Contractor knew or had personal knowledge that said chemicals were inferior and impotent; nor that the workmen were incompetent and unskilled. He does allege that these facts *were known or should have been known to the Termite Contractor*. These allegations are not the equivalent of unqualified and positive knowledge of such facts by the Termite Contractor. Fraud or dishonesty in the execution of contracts is never presumed. Where such character of acts is relied upon for success in an action for breach of contract, the facts pertinent thereto must be positively and unequivocably set out and supported by clear and convincing proof. Negligence is, in no sense, the synonym of fraud or dishonesty. As to the chemicals used in and on the buildings, these could have been inferior in grade or/and quality without the Termite Contractor's knowledge, and even without the knowledge of the person from whom it acquired them. They may have been bought under a guarantee, yet been of poor grade. It is true,

as argued, that it was the duty of the Termite Contractor to know beyond question that the chemicals were of first-class quality. But if he did not, as a matter of fact, for the reasons above mentioned, or possibly others, have such knowledge, can it be truthfully said that he acted dishonestly? No. He was legally negligent. In so assuming and acting he was not dishonest; nor did he act fraudulently. In such contingency, the duty rested upon it under the plain terms of the contract to continue its efforts to eradicate the termites and to repeat the effort until the contract has been performed on its part. If this is not done, then an action for the contract's breach properly lies,—not because the Termite Contractor has acted dishonestly but because through his negligence the contract has not been performed. We find no case in point. The nearest approach thereto is American Cigar Co. v. Fabacher et al., 156 La. 182, 100 So. 299. There defendant agreed to furnish plaintiff "an open spring wagon, good mule, and honest sober driver to do hauling", etc. The wagon, mule, and a driver were furnished. One day while the driver was absent at lunch for about ten minutes, a thief stole from the wagon its load of merchandise. Suit was instituted to recover the value of the stolen goods. The gravamen of the petition is that said driver "was not an honest sober driver, and in fact was a grossly negligent and careless driver", etc. Plaintiff's demand was properly rejected. The driver was sober and honest, but the loss occurred from his negligence in leaving the wagon with its burden of merchandise unattended, thereby making its theft possible. The court said:

"It is not possible for this court to add liability for negligence, or liability for the dishonesty of third persons, to the contract between the parties, without making an agreement to which they have not consented. A written contract is presumed to express the intention of the parties, and it is the law of the case between the parties."

And so may it be said here. Plaintiff's petitions in substance and effect only charge that because of the Termite Contractor's negligence the contract was not performed by it.

For the reasons assigned, the judgment appealed from is affirmed with costs.

DREW, J., dissents.

*Rehearing denied April 10, 1939; writ of certiorari denied by Supreme Court May 29, 1939.