The plaintiff Parkerson sues to recover the sum of $697.93 for a breach of contract, and said plaintiff and Rudolph Dupuis ask for judgment against the same defendants for the sum of $150, also for a breach of contract. The defendants are the Home Protection Service, Inc., a company engaged in the extermination of termites and hereafter called the termite company; A.H. Shrauger, the representative of the termite company, and the United States Fidelity Guaranty Company, the surety on the bonds given by the termite company, and hereafter called the surety company.
Parkerson alleges that he entered into three contracts with the termite company, through its said representative, to exterminate the termites in three buildings owned by him in the City of Lafayette. Two of these agreements are in the form of an application for service membership in the termite company for the extermination of the termites in buildings owned by Parkerson and described in the applications. These applications are dated in July, 1942, and recite that said plaintiff paid a fee of $15 for one and $25 for the other. The applications provide that a regular standard service contract will be issued to the applicant when the total fee shall have been paid in full. There is no allegation to the effect that the full fee was paid and a regular service contract made for guaranteed service to the two buildings mentioned in the applications.
On November 26, 1941, Parkerson entered into a written contract with the termite company, through its said representative, whereby the termite company agreed to exterminate the termites in said plaintiff's residence and service it for a period of two years for a consideration of $168.35. The following clause appears in this contract in bold printed type:
"It is understood and agreed that this contract is entered into with full cognizance of Act 141 of 1936 of the Legislature of the State of Louisiana, and in accordance with the regulations of the Louisiana Horticultural Commission, and that termite control work to be done hereunder by the Home Protection Service, Inc., is guaranteed for a period of two years in accordance with the bond on file with the said Commission".
At the foot of the contract after the signature of the parties there is a note stating that this form of contract has been adopted after its approval by the Louisiana Horticultural Commission. The contract and the applications referred to are annexed to and made a part of the petition. *Page 258 
The two plaintiffs, Parkerson and Dupuis, allege that they entered into a verbal agreement with the termite company, through its said representative, in August, 1942, for the complete termite treatment of the Azalea Courts owned by these plaintiffs.
In compliance with an exception of vagueness filed by the surety company, plaintiffs filed a supplemental petition elaborating on some of the allegations in the original petition. The pertinent allegations in the original and supplemental petition relative to the violation of the two agreements made by Parkerson with the termite company in accordance with the applications referred to and the violation of the verbal contract entered into by Parkerson and Dupuis with the termite company are to the effect that these plaintiffs paid the amounts stated to the said representative of the termite company, and neither the company nor its representative performed the services contemplated by these contracts, and did nothing in the way of treating the buildings covered by these contracts for the eradication of the termites, and they are asking for a recovery of the amounts paid on these contracts.
The allegations of Parkerson with reference to the written contract of November 26, 1941, are to the effect that the representative of the termite company entered the premises described in the contract for the purpose of rendering treatment for termites therein and worked on the residence of plaintiff for several weeks, but that the work was improperly done and substantial damage was done to the sills, woodwork and foundations of the building, which damages are set out in detail in the supplemental petition.
It is alleged in the original and supplemental petitions that the termite company furnished a bond with the defendant surety company guaranteeing the faithful performance of all contracts, agreements and work undertaken in the State of Louisiana by the termite company, which bond is held by the Horticultural Commission of Louisiana. Photostat copies of two bonds dated October 7, 1937, with continuing certificates of said bonds up to October 7, 1942, were filed with and made part of the supplemental petition.
The surety company filed an exception of no cause or right of action, which exception was sustained, and the suit as to the surety company was dismissed. Plaintiff took an appeal from this judgment, and the only question before us on the appeal is the correctness, vel non, of that judgment. It is therefore unnecessary to detail the status of the other two defendants.
The trial judge sustained the exception of no cause or right of action filed by the surety company on the theory that the bond signed by this company was a statutory bond given in accordance with Act 141 of 1936, section 4 of which act authorizes the Horticultural Commission to require a licensee performing services in the State covered by the act to give a bond conditioned that such licensee shall "honestly conduct said business"; that in order to hold the surety, it was necessary to allege and prove that the termite company did not honestly conduct its business in the State of eradicating the termites, and the petitions in this case do not so charge. The court based its ruling largely on the case of Anders v. Evans Co., Inc. et al., La. App., 187 So. 109.
There were two bonds given by the surety company and filed with the Horticultural Commission for $1,000 each, running in favor of the Commission. The condition of one of these bonds is that the said termite company will honestly conduct its business of termite control, and recites that it is given in accordance with Act 141 of 1936. If this were the only bond signed by the surety company and declared on in the case, it is obvious that the case of Anders v. Evans Company, supra, would be applicable and decisive of the case as the situation would be almost exactly the same as it was in the cited case. However, the surety company signed another bond for the termite company in compliance with a regulation passed by the Horticultural Commission requiring licensees performing services under Act 141 of 1936 (such as termite control), and who entered into contracts guaranteeing their services, to give a bond and file it with the Commission. This regulation was passed by the Commission evidently under the assumption that it had the authority to pass such a regulation under Section 1 of said Act wherein the Commission is given the power "to make rules and regulations governing the qualifications and the practicing of a person engaged in the professional services herein defined." The apparent object of the regulation was to protect the public against those persons practicing these professions *Page 259 
who went so far as to guarantee their services in order to obtain contracts.
The termite company accepted and complied with this regulation of the Commission, and so noted its compliance therewith in the contract it signed with Parkerson on November 26, 1941, as is shown from the extract from said contract already quoted. The surety company likewise took cognizance of and complied with said regulation as will appear from the following quotation from the bond which it signed and which bond is annexed to the supplemental petition, viz:
"Whereas, in accordance with the terms and provisions of Act 141 of the Legislature of 1936, the above named Home Protection Service, Inc. has applied to the Horticultural Commission for a license to engage in Entomological (Termite Control) work as prescribed by Act 141 of 1936; and,
"Whereas, the provisions of Regulation 8, Paragraph (c), of the Regulations of the Horticultural Commission, adopted pursuant to the provisions of Act 141 of 1936, require licensees who enter into contracts that guarantee their professional services to furnish a bond conditioned upon the faithful performance of said contracts; and,
"Whereas, the license to be issued is conditioned upon the furnishing of this bond in compliance with Section 4 of the Act referred to; and,
"Whereas, the said Home Protection Service, Inc., Principal, has entered into contracts guaranteeing that the professional services rendered by him as Entomologists will be satisfactory for a period of two years.
"Now, therefore, the condition of this obligation is such, that if the said Home Protection Service, Inc., Principal, shall faithfully perform the obligations imposed upon him in the said contracts guaranteeing the professional services rendered, then this obligation shall be void; otherwise, to remain in full force and effect."
[1,2] Regardless of the question of whether or not the Commission had the right to pass the regulation requiring a person engaged in the profession of termite control and guaranteeing his services to give a bond for the faithful performance of such a contract, it remains a fact that both the termite company and the surety company complied with the regulation and made it possible for the termite company to hold out to plaintiff and actually put into its contract with him the statement to the effect that the work to be done under the contract was guaranteed for a period of two years in accordance with the bond on file with the Commission. The termite company paid a premium to the surety company annually to keep this bond in force, and the surety company cannot now be permitted to escape liability on this bond on which it collected the premiums and under which it voluntarily bound itself.
There was nothing to prevent the surety company from making the agreement of suretyship in favor of a third person for the consideration paid to it by the termite company and under a regulation of the Commission. The bond is a contractual obligation, running in favor of Parkerson and accepted by him. Civil Code, Article 1890; Fisher v. N. O. Coffee Co., Ltd., et al., La. App., 155 So. 281. Our conclusion is that the bond given by the surety company to guarantee the performance of the contract entered into by the termite company with Parkerson on November 26, 1941, is not a statutory bond, and it cannot be controlled by the well established rule of construction that whatever is required by the statute is read into such a bond. The rule of construction to apply to this bond is that as the parties have bound themselves so shall they be bound.
[3] As to that part of the petition which seeks to recover from the surety company for the amounts paid by Parkerson for service on two other houses, $25 for one and $15 for the other, as represented by the documents annexed to the petition and marked exhibits "B" and "C", the petitions do not set out a cause of action for the reason that there is nothing in these agreements to show that the service was guaranteed, nor is there any reference made to any bond or other security. The parties could not be presumed to have contracted with reference to any bond executed by the defendant surety company, and there is nothing to show that the surety company stood as surety for these contracts. The same thing can be said of the amount of $150 alleged to have been paid by Parkerson and Dupuis for treating the Azalea Courts owned by them.
[4-6] On the question of putting the termite company in default, no allegation to that effect was necessary as to the claim *Page 260 
arising for the breach of the contract of November 26, 1941. The damages claimed for the breach of that contract consist of the sum of $168.35 paid the Service Company for eradicating the termites in Parkerson's residence; the sum of $306 damage to the building, and the sum of $183.58 alleged to have been paid to another for doing the work that should have been done by the defendant termite company, a total of $657.93. If the allegations of the original and supplemental petitions are accepted as true, as they must be for the purposes of the exception, the facts will show that there was an active violation of this contract. The whole burden of the allegations with reference to the breach of this contract is that the termite company actively undertook to perform the work it had agreed to do, but did not properly execute the work; that it caused damage to the building by reason of the improper and unskillful execution of the work. Where a contract provides that a certain work is to be done, such as the construction and delivery of a piece of machinery, or a building, in accordance with certain specifications, a failure to construct or deliver the kind of machinery or building agreed upon because of improper or unskillful workmanship, the breach of such a contract is active and does not require a putting in default before suit is brought for damages. See Morton v. Pollard,9 La. 174; Nicholson v. Desobry, 14 La. Ann. 81; Levy v. Schwartz Bro. et al., 34 La. Ann. 209; Berje v. T. P. Ry. Co., 37 La. Ann. 468; Sarrazin et al. v. Adams Co. et al.,110 La. 124, 34 So. 301; Payne Joubert v. Amos Kent Brick Lumber Co., Ltd., 110 La. 750, 34 So. 763.
For the reasons assigned, it is ordered that insofar as the judgment appealed from sustained the exception of no cause or right of action filed by the defendant surety company as to the bond given by it to guarantee the work undertaken by the termite company under its contract with plaintiff dated November 26, 1941, the said judgment is reversed and set aside, and to the extent stated, the said exception is overruled, and the case remanded to the district court to be proceeded with according to law and the views herein expressed; that in all other respects, the said judgment be and the same is hereby affirmed; the defendant surety company to pay the costs of the appeal, and all other costs to await the final termination of the case.