CAVANAUGH, Judge.
During August, 1947, the defendant, Dudley Briley, commenced the construction of a tourist court on Louisiana Highway No. 5, two miles north of the City of Opelousas.’ He undertook to do the work as owner. He obtained bids on some of the work, but most of it, was done under his supervision by day labor. The plumbing was let by contract. Defendant received three bids on the plumbing work to be done. In connection with the plumbing, bids were submitted for the furnishing and installation of the fixtures and their connections. Defendant did not supply each prospective bidder with plans or specifications of the work to be let or the character of the fixtures of materials to be furnished except a rough draft was made showing the location where the fixtures were to be installed in each of the three units of the proposed tourist court.
Defendant received three bids for the plumbing, namely, the bids of the plaintiff in the sum of $1940, the bid of L. V. Cha-chere for $2375, and that of John Hollier for $3600. The plaintiff being the low bidder was awarded the contract. There was a verbal contract and no time limit could be specified when the work was to be commenced or finished, because the defendant was doing the work himself and the progress of plaintiff’s work would depend on when the buildings were commenced.
Plaintiff agreed under the terms of his bid to furnish and install the following fixtures: 6 toilets; 6 17-inch by 19-inch lavatories; 3 flat rim sinks; 2 40-gallon hot water tanks; 6 shower stall fittings; 1 60-foot running drain; and 9 gas openings capped above the floor, all for the sum of $1940. On the day the contract was awarded, plaintiff moved some pipe on defendant’s premises and shortly thereafter laid a water line from defendant’s potato kiln to the place where the buildings were to be constructed. The first part of the work undertaken by plaintiff in the performance of his contract was the roughing in of the plumbing. Plaintiff contends that the job was roughed in under the direction of defendant, and after the roughing-in job was completed, defendant poured or constructed a concrete floor in each of the cabins. After the floor had been poured, it was discovered that partition walls of each of the respective cabins had to be moved a distance of 4 or 5 inches in order to widen an opening for a door from the kitchen to the bathroom. This threw the fixtures out of line with the wall in each of the cabins and additional couplings and pipe were necessary for the fixtures.
*760 Plaintiff completed the job under the contract during the month of December, 1947, or approximately 4 months after he commenced the work. The defendant has not paid the plaintiff any part of the contract price agreed upon. He assigned as his reason for not paying that the work had never been completed and accepted.
We have carefully studied the evidence in this case and find that the evidence shows that the plumbing installations, according to the expert testimony of the plumbers called by the defendant, work properly, but that the toilets and lavatories were not placed flush against the wall and affect the appearance of the room. The plaintiff contends that the reason that the fixtures were not placed close to the wall was because the walls were built after the openings for the fixtures had been roughed in, and that is the reason for their being out of line. If the entire walls are moved now to place them closer to the toilets and lavatories, it will throw the pipes to the shower stalls outside of the wall. The plaintiff offered to build a wall or build out the wall back of each toilet to give them proper support, but the defendant declined to have it done. He insists on plaintiff’s taking up the pipe and removing the toilets back against the present wall as originally built. This would entail a breaking up or a material disturbance to the concrete floor which would entail considerable cost.
The District Judge allowed the defendant $150 because the defendant furnished one tank when the contract provided that the plaintiff was to furnish two tanks. He allowed the plaintiff -$5.50 each for installing three stoves and $30 for repairing a damaged water main which defendant had broken when he was having a road graded to the premises. The Court deducted $30 from the contract price .for each of the walls to be built up back of the water closets, or the total sum of $180, and also granted the defendant $36 for installing a water drain, the total amount awarded the plaintiff being the sum of $1620.50, after deductions and credits, with legal interest from January 1, 1948, the date which the Court assumed the work was accepted.
Our study of the evidence in this case convinces us that this is a suit governed by Article 2769 of the LSA-Civil Code, which provides:
“If an undertaker fails to do the work he has contracted to do or, if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages .for the losses that may ensue from his non-compliance with his contract.”
This Article must be construed with the doctrine of substantial performance. If the plaintiff has substantially performed his contract with the defendant, then he is entitled to be paid. If his work under the contract is faulty or defective, he is still entitled to be paid under the terms of his contract, and the defendant’s right if the work has not been completed is to finish it or if it is faulty or defective to make the necessary correction and charge the cost thereof to the plaintiff. The defendant in this case did not alter or do anything to the work after the time plaintiff claims it had been finished and turned over to defendant. Defendant, prior to the completion of the work and subsequent thereto, has used the property and plaintiff’s work and materials have inured to his benefit. In order .for an owner to escape the payment of part of all of the contract price on account of omitted or defective work covered by the contract, he must prove the damages caused by the defects and omissions. In the event the contractor has not substantially performed the contract for all of the work, he is still entitled to recover for the value of his work and the materials which have inured to the benefit of the owner. Recovery in these cases is allowed on the theory that the owner ought not to be able to enrich himself at the expense of another, and this unjust enrichment theory, according to the jurisprudence in this State, outweighs the obligation to perform of the wilfull violator. Etie v. Sparks, 1832, 4 La. 463; Allen v. Wills, 1849, 4 La.Ann. 97; Taylor v. Almanda, 1897, 50 La.Ann. 351, 23 So. 365; Babst v. Peritz & Yochim, Orleans Appeals, No. 7548, Teissier’s Digest of the *761 Unreported Decisions of the Court of Appeal (1923) 36; Peterson v. Sutter, 1926, 4 La.App. 180.
Now the defendant in this case claims that he was present when practically all of this work was being done and one of his main complaints is that he gave the plaintiff the contract because he was a licensed plumber and on account of his particular skill and with the understanding that he would personally do the work. It is his contention that plaintiff did not remain on the job during its progress and for that reason the plumbing work was not completed as soon as expected when the contract was let. He further complains that the work was done by a helper who was only a pipe fitter, and that is the reason why the fixtures were not properly placed where he wanted them to be placed. If defendant was on the job during the construction and saw that the work was being improperly done and not according to the sketch or plan he had furnished, plaintiff at the time his bid was submitted, then it was his prerogative to stop the work and terminate his agreement. If the work was not being done in accordance with the agreement, the defendant surely had good cause to terminate it. But can he, after he permitted the work to be done and which he saw was being done at the time, repudiate his obligation to pay for what has been done and for what he has used continuously.
The defendant has reconvened in this case and asks that he be awarded $570 to tear out and replace the toilets and lavatories; $80 for cast iron sinks to replace steel sinks substituted by plaintiff; $210 to install chrome pipe and fittings; and $1200 for delay in completing the plumbing work, and $1530 for loss of trade he suffered. After the courts out of which this plumbing contract arose were completed, defendant built several other tourist cabins on his land. Surely if the plumbing installations and the cabins in which they were installed were not suitable and commodious enough to accommodate his trade, and needed repaid to the extent he has contended for in his pleadings, he would not have expanded his operations, but would have repaired the plumbing installations about which he now complains. It would surely have been cheaper if repairs were necessary to accommodate his trade than it would have been to have constructed new installations.
It is our opinion that the defendant, having seen the plumbing fixtures installed and having used them for more than a year before this suit was filed, tacitly accepted these fixtures and their installations as a substantial performance of plaintiff’s contract with him; that the defects complained of in the work are not of a substantial nature to preclude plaintiff from recovering under the contract. Cairy v. Randolph, 1851, 6 La.Ann. 202; Davidson v. McGrath, 1926, 5 La.App. 125; Reimann Const. Co. v. Upton, La.App.1938, 178 So. 528; Lillis v. Anderson, La.App.1945, 21 So.2d 389; A. M. Blodgett Const. Co. v. Cheney Lumber Co., 1912, 129 La. 1057, 57 So. 369; Borne v. Hardin, 1930, 15 La.App. 286, 131 So. 472; Merrill v. Harang, La.App.1940, 198 So. 386; Lillis v. Anderson, La.App.1945, 21 So.2d 389.
The Lower Court has correctly allowed proper deductions and credits under the evidence and has rejected defendant’s re-conventional demand. It is our opinion .that the evidence and law fully support its judgment.
For the reasons assigned, the judgment is affirmed.