SAMUEL, Judge.
This is a suit on a building contract brought by the owners, husband and wife, against the contractor and his surety. The petition alleges that construction was not in accordance with the written contract, plans and specifications and was not done in a workmanlike manner. It seeks damages, reimbursement for alleged overcharges and deficiencies, liquidated damages under the demurrage clause of the contract, and attorney’s fees. The contractor reconvened for the balance due under the terms of the contract.
There was judgment in the trial court in favor of plaintiffs and against the defendants in solido in the sum of $10,749.61, less a credit of $4,961.00, the last figure representing the unpaid balance of the contract price as stipulated by counsel. Defendants have appealed from this judgment and plaintiffs have answered' the appeal asking that the judgment be amended in their favor to include demurrage for delay in completing the building, the claim for de-murrage having been disallowed by the trial judgment.
On July 26, 1957 plaintiffs entered into a written contract with the defendant, Le-moine, for the construction of a residence in the Parish of Jefferson at a cost of $17,-000.00. Fidelity Homestead Association, which financed the construction, was a party to the contract and the other defendant herein, U. S. Fidelity & Guaranty Company, was the contractor’s surety. The contract protected the interest of the homestead by providing that the work was to be done to the satisfaction and under the direction of the homestead’s building expert. It further provided that the work was to be done in strict accordance with the drawings and specifications identified with the contract. Completion was required within 120 days from the recordation of the contract, which in this instance took place on July 30, 1957, under penalty of $10.00 for each day’s delay in completion beyond the 120 day period. The contract also provided for attorney’s fees.
On October 18, 1957, the building expert was of the opinion that with six minor exceptions, the residence has been substantially completed and stated that it would be in order for the owners to sign the acceptance, provided the contractor and bonding company took cognizance of the exceptions which were to be completed before final payment. On the same date, October 18, 80 days after the contract was recorded and 40 days before the expiration of the allowed construction period, plaintiffs took possession and moved into the premises. They have lived there continuously since that date but they have never signed the acceptance.
Originally a serious complaint was the fact that the roof on one side of the house was located closer to the side property line than permitted by the pertinent building regulations of the Parish of Jefferson. This resulted in numerous negotiations between the parties and their attorneys, all of which failed. However, subsequent to the filing of this suit a waiver of the violation was obtained from the Jefferson Parish Board of Regulatory Inspection which rendered moot that matter, and the resulting claim for depreciation, orig *721 inally forming two of the items of damages claimed by plaintiffs.
Several other items claimed by plaintiffs, being credit for electric fixtures ($110.00), and attic fan and shutters ($125.00) and the cost of builders’ risk insurance ($49.61), were admitted by the defendants as being due and were correctly allowed by the judgment, which allowance is affirmed.
The remaining items allowed by the judgment and now involved in the case are: the cost of remedying 54 small items; the cost of correcting a sag in the roof over the rear porch; omission of heater, duct work and wiring for air conditioning as required under the plans and specifications; cost of correcting failure to put gravel under the house slab; cost of an air conditioning unit; attorney’s fees; and penalties under the contract demurrage clause as claimed in the answer to this appeal.
Plaintiff witnesses who offered testimony pertinent to the issues now involved were: plaintiffs themselves, an architect, a general contractor and Mrs. D’Antonio’s brother who had made his home with the plaintiffs. Pertinent testimony was offered on behalf of defendants by the contractor-defendant, his wife, his daughter, a sheet rock finisher, a painter, the owner of an air conditioning service, the manager of an electric company, a terrazzo contractor and the building expert for the homestead.
We are of the opinion that a detailed discussion of the testimony relative to the 54 items and the sag in the roof would serve no good purpose. Although some of that testimony is to the effect that the cost of remedying the 54 items was in excess of $1,500.00 as alleged and claimed in the petition, plaintiffs are limited by the maximum amount prayed for and they have offered sufficient proof to establish that they are entitled to the $1,500.00 as claimed. Nor can there be any real question about the sag in the roof which needed correction and the fact that the cost thereof would be $300.00. Therefore, we will affirm that portion of the judgment which allows these items in those amounts.
Plans and specifications called for a 4 inch layer of gravel under the slab. The testimony of the expert witnesses is that the purpose of this layer of gravel is to break the capillary action of the soil so that the under side of the slab will not be damp or, if dampness does occur, the same will be kept to a minimum. The contractor encountered a rainy spell from the time he began to excavate for the foundation until he poured the concrete for the slab and, with the approval of the' building expert of the homestead, used a proper amount of “sugar” or “spillway” sand as fill instead of the gravel. The homestead expert did not mention the subject of the substitution to the plaintiffs and we find as a fact that the substitution did not have the approval of either of the plaintiffs.
Three expert witnesses gave testimony on the subject with which we are now concerned. The homestead’s expert testified, for defendants, that he agreed to the substitution because he was and is of the opinion that in the area in which the property is located the gravel had no structural value; he felt that there would be a settlement of the soil and, the best water barrier being air space, the gravel would serve no useful purpose.
An architect called by plaintiffs testified that in some areas where the soil is granular gravel under the slab serves no useful purpose because it results in the gravel penetrating into the soil and the desired effect is lost; and to use gravel where the soil is granular and the capillary action is not a problem may not be desirable. He made three inspections, two in January and one in October and found no evidence of dampness. He did point out that this did not mean that under some extraordinary conditions during periods of extreme wet weather some evidence of dampness would not be found. He was of the opinion that to correct the absence of gravel under the slab after construction would be beyond the *722 realm of sensible operation but he estimated the cost of such correction would amount to $4,000.00 or $4,500.00.
Plaintiffs’ other expert witness, who was a general contractor, testified that he made two inspections of the premises during which he saw no evidence of dampness. In his opinion, based on his previous experience, dampness will occur when gravel is not placed under the slab. He estimated the cost of correcting the absence of gravel would be $4,000.00.
We are of the opinion that there was a substantial compliance with the building contract. But under LSA-Civil Code Article 2769, while such a compliance with a building contract is sufficient to justify recovery of the contract price, the owner is entitled to a reduction of that price by the amount of the cost of the necessary completion, correction and repair. Bertrand v. Ducote, La.App., 128 So.2d 809; Loeb v. Neilson, La.App., 128 So.2d 447; Norman v. Brown, La.App., 83 So.2d 488; DuBos v. Sanders, 174 La. 27, 139 So. 651. In the instant case plaintiffs are entitled to recover the amount which has been proved to be the cost of such completion and correction, i. e., the sum of $4,000.00. Accordingly, the judgment appealed from, which allowed $5,000.00 for this item, will be reduced by $1,000.00.
Two items, the alleged omission of the heater, duct work and wiring as required under the plans and specifications, and the cost of an air conditioning unit, were allowed in the judgment in the respective amounts of $800.00 and $1,165.00. As these items are closely interrelated in the testimony, we will discuss them together. The litigants agree that the residence, as originally planned, contemplated and included the installation of a heater and duct work and wiring -for future air conditioning; the cost of these items was included in the original contract price. They also agree that this plan was changed after construction had begun; the owners and the contractor agreed to include a central air conditioning unit at additional cost and with an allowance for the heater which would be rendered unnecessary.
The record clearly establishes, without contradiction, that the duct work and wiring for air conditioning were actually installed in the building and plaintiffs are not entitled to a credit therefor. The balance of these two items presents more of a problem and the testimony in point is thoroughly confusing and conflicting. Although the testimony of the two plaintiffs is itself somewhat conflicting, in substance they said that: Lemoine told them he had discovered a combination unit for heating and air conditioning which would cost only “four hundred and something”; he offered to give them a credit of $125.00 for the attic fan and shutters (as set out hereinabove, credit for this amount is allowed in the trial judgment under a separate item), leaving a balance of slightly over $300.00 to pay for the complete air conditioning; later he told them he wanted $1,000.00 more and they paid this amount by check direct to United Services; then a Mr. Nixon, of United Services, informed them that they still owed $485.00 and when they refused to pay this amount he removed the compressor from the side of the house.
The testimony of Lemoine is to the effect that: plaintiffs requested that he obtain prices on a complete air conditioning unit, which he did; he had explained to plaintiffs that if they used window units in each bed room and in the kitchen the cost of the units would be $1,200.00 and their electric bill would be much higher than for the central air conditioning; the cost of the air conditioning unit would be $1,780.00 but plaintiffs would be allowed a credit of $316.00 for the heater and $125.00 for the attic fan and shutters so that the difference in cost would be small; plaintiffs told him that they would take the unit at these figures and he obtained the same from United Services, the transactions between United Services and plaintiffs being direct to the extent that he did not participate in it in a financial way, with the exception that he *723 paid United Services the $316.00 allowance for the heater; plaintiffs later paid Nixon of United Services the sum of $1,000.00 by check.
Nixon of United Services substantially corroborated that part of Lemoine’s testimony which related to his activities and further testified that he had removed the compressor because of the non-payment of the balance due of $459.00 (or $464.00, his witness did not have his figures with him at the time he testified).
Considering all of the testimony, we are of the opinion that the agreed price for the air conditioning unit was $1,780.00. To accept the testimony of plaintiffs in its entirety would mean in effect that they would receive the air conditioning unit, after a credit for the attic fan and shutters and the heater, at the same cost to them as originally planned for the heater, duct work and wiring, and fan alone, without any additional cost whatsoever for air conditioning. Lemoine having paid $316.00, the allowance for the heater, to United Services on the purchase price of the air conditioning unit, the $800.00 and $1,165.00 awards contained in the trial court judgment will be disallowed.
We now address ourselves to the question of attorney’s fees. The contract provides for liability in addition to the amount of the bond for “ * * * attorney’s fees incurred in any concursus or other legal proceedings made necessary by the failure of the builder to faithfully comply with the foregoing contract, said attorney’s fees to be fixed at ten per cent on the amount of the foregoing bond.” The bond is in the amount of $17,000.00. Defendants argue that the proceedings were not “made necessary” within the meaning of the language of the contract. We do not agree. We are of the opinion that the necessity for this suit is obvious. Attorney’s fees being liquidated and set by the contract at the sum of $1,700.00, the award by the trial court in that amount will be affirmed.
The only remaining item is that of demurrage claimed by plaintiffs in the amount of $10.00 per day, or a total of $11,-630.00 as of February 1, 1961. As has already been pointed out in this opinion, plaintiffs took possession of the residence 40 days before the expiration of the allowed construction period and have since continuously occupied the premises. Under these circumstances they are estopped from claiming demurrage. Sarrazin v. Alfred A. Adams & Co., 110 La. 124, 34 So. 301.
For the reasons assigned, the judgment appealed from is amended only insofar as to decrease the award by the sum of $2,965.-00 so that the amount awarded shall be the full sum of $7,784.61, less a credit of $4,-961.00, making a net amount of $2,823.61. As thus amended, and in all other respects, the judgment is affirmed; plaintiffs-appel-lees to pay the costs of this appeal, defendants-appellants to pay all other costs.
Amended and affirmed.