SAMUEL, Judge.
This is a suit for the balance due on a building contract. The defendants answered, denying liability, and reconvened for the return of a $200.00 deposit and for an additional sum of $5.00, the cost of a building permit paid by them. There was judgment in the trial court in favor of defendants and plaintiffs in reconvention, dismissing the original suit and awarding plaintiffs in reconvention the sum of $205.00 as prayed. Plaintiff has appealed.
The written building contract called for the installation by the plaintiff of aluminum siding on defendants’ home and the construction of a patio or carport on their property for a total price of $2,420.00, $200.00 of which was paid in cash on the signing of the contract with the balance payable upon completion of the work. The pertinent portion of the contract reads as follows:
“Supply and install Aluminum Siding (White) on entire wood section of house, Both sides front and Rear— Caulk all windows, corners of Aluminum' — 4" Boards — Spl. Deluxe Patio Heavy duty Poles, flashed to aluminum.”
By mutual consent the contract was amended to include the painting of certain awnings at no increase in the contract price. Work was commenced shortly after the contract was signed and was completed (the evidence is conflicting as to the actual number of working days) in approximately seven to fourteen working days.
Defendants resist liability on two grounds: (1) The work was performed in a poor and unworkmanlike manner; and (2) the materials used were inferior to and not in accordance with contract specifications.
To prove the first contention defendants offered the testimony of only one witness, an experienced general contractor, in addition to themselves. On this point plaintiff offered five witnesses, two of the workmen who did the job, two plaintiff officers and a representative of the manufacturer of the siding material used. The testimony on behalf of plaintiff is that the work was properly performed in accordance with the contract. The testimony on behalf of the defendants is to the contrary. We accept the testimony of defendants’ expert, who said the installation had not been performed in a completely workmanlike manner and that additional work was necessary in order to properly complete the job. He was of the opinion that such additional work should include replacing of a minor item in the carport, minor painting of the awnings, renailing the siding, patching up of the carport guttering, and removing an excessive' amount of caulking on the front porch. He estimated it would take one man approximately three days to complete all of this work and that the cost thereof would be $75.00 for labor and $25.00 to $50.00 for materials. He also testified that the work performed by plaintiff, when completed, would improve the property.
Performance of work in connection with the type of building contract here involved is governed by LSA-C.C. Art. 2769, Loeb v. Neilson, La.App., 128 So.2d 447; Papa v. Louisiana Metal Awning Company, La.App., 131 So.2d 114. Under that article substantial performance is all that is-required of the contractor; and if there is. substantial performance the owner can recover only the reasonable cost of correction! *926 or completion. D’Antonio v. Lemoine, La.App., 144 So.2d 719; Airco Refrigeration Service, Inc. v. Fink, 242 La. 73, 134 So.2d 880; Norman v. Brown, La.App., 83 So.2d 488.
The testimony of defendants’ expert convinces us that there was substantial performance by the plaintiff. The cost of correcting the defects is small compared to the contract price. We are therefore of the opinion that the defendants are entitled to a return or credit of $125.00, by their proof the maximum cost of correction. They are also entitled to a return or credit of the $5.00 expended by them for a building permit.
In connection with defendants’ second contention relative to the materials used, the chief complaint is that the siding material was inferior to and not in accordance with that called for by the contract and not similar to a sample which had been shown to them by plaintiff’s salesman; that the contract contemplated 4" interlocking aluminum siding boards and the material actually used was not interlocking but came in sheets and was installed by simply nailing the sheets to the building, similar to the installation of sheetrock. Defendants also complain that the siding was applied over a felt base despite the fact that they had been told by the salesman it would he applied over aluminum foil.
It is not disputed that the siding was not the interlocking type. It was aluminum, in sheets 4 feet wide and 8 feet long, pressed into a weatherboard effect and applied over a 15 pound felt base. The two defendants testified that at the time of the signing of the contract plaintiff’s salesman informed them that the siding which would be used would be in 4 inch boards of an interlocking type and that the house would be insulated with, that is the siding would he applied over, aluminum foil. Defendants introduced in evidence a sample, given to them by the salesman, of the siding to be used. The salesman was not employed by plaintiff at the time of trial; he had left the state and was unavailable for testimony.
Plaintiff’s president testified that the siding material used is properly described in the contract as aluminum 4 inch board; that the only other 4 inch board obtainable in this area is under franchise to a competitor and not available to the plaintiff; that the interlocking type of siding comes in individual boards 8 inches in width and 10 to 12 feet in length; that the siding used in the construction was thicker gauge material and therefore better quality than the sample introduced in evidence by the defendants; that either aluminum foil or felt may be used as insulation; and the use of a 15 pound felt base, as in the instant case, is standard procedure in applying all types of siding over weatherboards.
Defendants made many complaints relative to the work being done in addition to those concerned with the materials used. In response to all of these complaints plaintiff’s salesman visited the premises almost daily and one of its officers also did so on several occasions as the job neared completion. We are convinced that plaintiff made a sincere effort to satisfy the complaints. The record is devoid of any proof whatsoever that the materials used, i. e., the siding and the felt base, were inferior to those defendants claim they expected to receive or that they were defective, inadequate, or not performing the function for which they were installed. The only evidence is to the contrary. And we note that the contract does not call for the use of any particular type of insulation, nor does it call for interlocking siding boards.
The defendants continued to live in the premises during construction and the type of siding and felt base used was apparent to both of them continuously from the time the installation thereof began. Although they saw the work being performed daily over a period of approximately two weeks or more, and permitted corrections by plaintiff of numerous other complaints, they made no effort to stop the installation *927 or to terminate the contract because of the siding and base used. After discussing with the salesman their complaint regarding the materials being used, and that discussion took place the day after the siding had been delivered to the premises, they permitted the installation, allowed the work to be completed and then refused to accept the completed work. Under these circumstances they cannot now, after completion, be heard to complain about the type of siding or base. As this court said in the case of D’Avy v. Briley, La.App., 72 So.2d 758, 761:
“If defendant was on the job during the construction and saw that the work was being improperly done and not according to the sketch or plan he had furnished plaintiff at the time his bid was submitted, then it was his prerogative to stop the work and terminate his agreement. If the work was not being done in accordance with the agreement, the defendant surely had good cause to terminate it.”
The case of Housecraft Div. of Southern Siding Co. v. Tatum, La.App., 130 So.2d 524, recently decided by this court, is not controlling. In that case we found as a fact that the materials used (scored mortar simulating brick) was not the steel reinforced brick called for by the contract and that the husband-defendant, Tatum, did not discover the fraud until the job was practically completed and he was powerless to stop the work.
For the reasons assigned, the judgment appealed from is amended and recast so as to provide, and it is now ordered, that there be judgment in favor of the plaintiff, Southern Patio, Inc., and against the defendants, Myrtle Brown, wife of and Louis F. Varnado, in the full sum of $2,220.00, subject to a credit of $130.00, together with legal interest thereon from date of judicial demand until paid; costs in both courts to be borne equally by plaintiff and defendants.
Affirmed in part; reversed in part.