BOUT ALL, Judge.
This is an appeal by defendants from a judgment awarding plaintiff, H. Frellson Page, Jr., $1,937.00 in damages. Plaintiff brought suit against defendants, H. B. White & Son, Inc., as building contractor, and Fidelity Bond and Deposit Company of Maryland, as surety, for alleged defects in the construction of plaintiff’s home at 5519 Cherlyn Drive in New Orleans. Plaintiff seeks $8,552.24 in damages for various items which he contends were either not completed as agreed or have been discovered since the construction of plaintiffs house to have been improperly done, or done not in accordance with the plans and specifications.
On April 19, 1967, plaintiff and defendant, H. B. White & Son, Inc., entered into a building contract whereby H. B. White & Son, Inc. was to construct a four bedroom brick veneer house for the sum of $50,925.00. On October 20, 1967, the contract was accepted by agreement of all parties. Incidental to the acceptance was a list of repairs to be completed by the contractor.
On January 27, 1970, plaintiff filed his petition describing a long list of complaints. The trial court analyzed each complaint and cast judgment accordingly. We also will look into each complaint. There are two major items not on original list but later alleged to be contrary to specifications.
Plaintiff alleges that butt joint boarding spaced with an excessive gap was substituted for tongue and groove subflooring which was required in the plans and specifications. Due to this, plaintiff seeks $6,104.00 in damages.
*727 William J. Gagan, Jr., who has been in the lumber business since 1946, sold the lumber in question to H. B. White & Son, Inc. Mr. Gagan testified that the type of boarding he installed was actually more expensive than tongue and groove, and that the type of boarding he installed constitutes 95% of the sheeting which he sells. He stated that with the butt joint boarding there was less chance for things to go wrong and that tongue and groove boarding has a tendency to cup and warp.
Although the plans and specifications do call for tongue and groove subflooring, plaintiff admits that he knew during installation that the sub flooring was butt joint. The evidence also shows that plaintiff actually gave his permission to use butt joint subflooring, and stood by without complaint while the butt joint subflooring was being installed.
Plaintiff claims that parol evidence is being allowed to modify a written contract, but the evidence shows, and this was pointed out by the trial judge in his reasons for judgment, that at the time of the signing of the contract a yellow mark indicating agreed change was placed over the portion of the contract calling for tongue and groove subflooring, and initialed by the parties. Thus the trial judge concludes and we agree that tongue and groove was not part of the specifications at the time of installation.
Plaintiff also argues that the plans and specifications call for underground electrical service installations instead of the overhead electrical service which was installed. Defendants allege that since that side of Cherlyn Drive was serviced by overhead electrical wiring plaintiff agreed to allow overhead wiring for his home. The trial court allowed plaintiff the damages sought on the ground that there was no physical mark placed on the written contract (as was the case with the flooring) indicating the substitution of overhead for underground service.
With this finding we agree, but the record further shows evidence of a later oral agreement because of the type of service made available by New Orleans Public Service. There was nothing in writing to modify the written agreement. Nevertheless plaintiff permitted the installation by allowing the work to be completed (the evidence shows that plaintiff visited the building site many times and it is obvious that he could see that overhead wiring was being installed). During construction plaintiff even noticed the pipe which runs down the side of the house and contains the wiring which connects to the meter. He then suggested that the pipe be painted the same color as the house in order to be less conspicuous.
Plaintiff cannot now, after - completion and acceptance, be heard to complain about the type of electrical wiring that was used in the construction of his home. See Southern Patio, Inc. v. Varnado, 153 So.2d 924 (La.App. 4th Cir., 1963), D’Avy v. Briley, 72 So.2d 758 (La.App., 1st Cir., 1954). The plaintiff and the examining architect did not complain about this item until asked by the attorney preparatory to suit, to examine the plans, specifications, etc., to make sure he included all possible claims.
Because it appears that this was a change order from the original contract, and because the record does not disclose that any credit was granted for the $200.00 difference in cost of installation (as testified by the contractor), we amend the trial court decision and grant $200.00 for this item rather than the present cost of change.
The next item under consideration is the alleged $822.00 in damages due to an inadequate paint job. We agree with the trial court that from reliance on the rather extensive testimony pertaining to the paint job, the exterior paint did deteriorate to a point where a new job was necessary after eighteen months. Mrs. Page testified that she was told that after eighteen months the *728 paint would begin to fade, but it is not reasonable to expect the actual amount of fading which actually took place. We agree with the award of $882.00 in damages for repainting.
We agree with the trial court that the plaintiff should be reimbursed for labor and material necessary to replace the disappearing staircase which was improperly constructed, to repaint the front door, and to replace the rear balcony posts which were rotten. We agree with the award of $164.00.
The trial court considered a number of minor complaints and decided to allow plaintiff an additional $271.00. Upon an examination of all the evidence presented, we are of the opinion that the additional award of $271.00 is just and adequate.
For the above reasons we amend the judgment of the trial court reducing the $620.00 allowed for electrical service to $200.00, and thus reducing the judgment in favor of plaintiff to $1,517.00, and as so amended we affirm the judgment appealed.
Amended in part and as amended, affirmed.